Verdict for the plaintiff for $65, with interest from the first of May 1831.

The defendant moved for a new trial on the ground that the verdict was against the evidence, and the instruction of the court upon the point of want of notice. But the court overruled the motion.

---

## Case No. 2,184.

### BURNS v. SIM.

[2 Cranch, C. C. 75.][1]

Circuit Court, District of Columbia. June Term, 1813.

BAIL—DISCHARGE OF PRINCIPAL IN INSOLVENCY—EXONERATION OF SURETY—FRAUD IN CONTRACTING DEBT.

1. If the principal has been discharged under the insolvent law of Maryland, the bail will be discharged.

2. Upon a motion to exonerate the bail, the court will not receive evidence of fraud in the principal in contracting the debt.

Mr. Law, for the defendant, offered evidence of the discharge of the principal under the insolvent act of Maryland, and prayed an exoneretur of the bail.

Mr. Caldwell, for the plaintiff, objected, and alleged fraud of the principal in contracting the debt with a view to insolvency.

THE COURT (THRUSTON, Circuit Judge, absent) was of opinion that fraud could not be examined into in this way, but that the certificate of discharge was conclusive, unless set aside in the manner provided for by the law of Maryland.

---

BURNS (UNITED STATES v.). See Case No. 14,691.

BURNS (WHITE v.). See Case No. 17,539.

BURNSIDE (PALMER v.). See Case No. 10,685.

[1] [Reported by Hon. William Cranch, Chief Judge.]

---

## Case No. 2,185.

### BURPEE v. FIRST NAT. BANK OF JANESVILLE et al.

[5 Biss. 405;[1] 9 N. B. R. 314; 18 Int. Rev. Rec. 190; 6 Chi. Leg. News, 110.]

Circuit Court, W. D. Wisconsin. Sept., 1873.

PLEADINGS IN CHANCERY — ANSWER — WHEN INSUFFICIENT—BANKRUPTCY — FRAUDULENT PREFERENCE — MORTGAGEES CHARGEABLE WITH NOTICE OF DEBTOR'S CONDITION—JUDGMENT CREDITOR'S RIGHTS RELATE BACK.

1. The Wisconsin Code has not changed the pleadings in equity cases.

2. An answer by a defendant denying upon information and belief allegations in the bill concerning which his knowledge, if any, must be direct and personal, is insufficient, and if he had no knowledge it should be so stated directly.

3. Such denials do not raise an issue, and the allegations must be taken as true.

4. These rules apply to a corporation as well as to an individual.

5. To set aside a mortgage as a preference void under the bankrupt act, it is not necessary to find that the mortgagees knew the condition of the bankrupt and his intentions. It is sufficient if they had reasonable cause to believe him insolvent, and if they had notice of facts sufficient to put them on inquiry they are chargeable with the knowledge which an investigation of the bankrupt's condition would have developed.

[Cited in Alderdice v. State Bank of Virginia, Case No. 154.]

6. The fact that the petitioning creditor's claim existed at the time of giving the mortgage only as a liability and not as a debt does not change the relation of the parties. The judgment being neither a payment nor satisfaction of the liability, the creditor's rights relate back to the time when the liability first became fixed.

In equity. This was a bill by Austin E. Burpee, assignee of Charles W. Hodson against the First National Bank of Janesville and George Barnes, to set aside a mortgage for $5,000, given by the bankrupt to the bank on the 18th of September, 1871, upon his grist-mill in Janesville, to secure a pre-existing indebtedness to the bank for that amount. [Decree for complainant.]

At that time an action was pending in this court, and on the calendar for trial, by the government against these defendants and others, as sureties on a distillery bond for upwards of $7,000. In this suit the government recovered a judgment against the defendants on the 25th day of September, for the sum of $7,116.36, upon which the United States district attorney, on behalf of the government, filed a petition in bankruptcy against Hodson, upon which he was duly adjudicated a bankrupt, and Burpee, the complainant, elected assignee.

J. C. McKenney, for complainant.
I. C. Sloan, for defendants.

HOPKINS, District Judge. It is very questionable whether the answer of the defend-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

ants filed in this case raises any issue for trial. The answer is confessedly informal, but that may be overlooked on final hearing if it denies the material allegations of the bill in such a manner as to constitute an issue within the established rules of equity pleading. The Code has not changed the pleadings in equity cases. In the bill it is charged that the only consideration for the note and mortgage sought to be set aside was a pre-existing note, describing it. The answer denies upon "information and belief," the allegation that there was no other consideration than a prior indebtedness of the bankrupt. Such a denial is insufficient and evasive. If any other consideration was given, the defendants knew it, and hence should have denied the allegation in the bill positively; and should also have set up what other consideration was given for the note. This is the equity rule of pleading, and it is also the rule under the Code against a corporation as well as a natural person. Mills v. Town of Jefferson, 20 Wis. 50; Kittredge v. Claremont Bank [Case No. 7,859]; 2 Daniell, Ch. Pl. & Pr. (4th Am. Ed.) 722, and notes. That denial does not raise an issue; therefore that allegation must be taken as true in deciding this case. The other material allegations in the bill as against the defendants, are not answered much more satisfactorily.

The bill sets up that the bankrupt, when he gave the mortgage, was insolvent, or acting with a view to insolvency. This is denied on "information and belief," and as the defendant might not be presumed to know that allegation, such a denial may be regarded as sufficient. But it is further alleged in the complaint, and as an essential element of the case, that the defendants, at the time of taking the mortgage, had reasonable cause to believe that the bankrupt when he gave the mortgage was insolvent, or acting in contemplation of insolvency, and in fraud of the bankrupt act. This allegation, instead of being positively denied, as it should have been if not true, is denied upon "information and belief" only, which is simply saying that according to their information and belief they had not reasonable cause to believe the allegation. Such a denial does not meet the charge in the bill. If the defendants did not know anything on that subject, they should have said so directly, and if they had no cause to believe the facts alleged, they knew that also, and should have said so. A denial of that allegation in the form adopted by these defendants is, in my judgment, clearly insufficient. It would not be good under the code system of pleading of this state, and is not supported by any rule of equity pleading that has fallen under my observation. Under no system of pleading is a party permitted to deny an allegation in his adversaries' pleading upon information and belief, when from the very nature of the charge his knowledge, if any,

must be direct and personal. All such allegations have to be answered positively, that the party has "no knowledge, information or belief" of the facts set up in the pleading.

The answer amounts to this only, that the defendants had been informed and believed they had not reasonable cause to believe that the bankrupt was insolvent, which cannot be sustained as a proper denial of the allegation in the bill under consideration. 2 Daniell, Ch. Pl. & Practice (4th Am. Ed.) 722 et seq., and notes.

But treating the answer as raising an issue upon that question, I think the proof shows that Hodson, the bankrupt, was then insolvent, and that he gave this mortgage to defendants to secure a pre-existing debt owing by him to the defendants, and for the purpose of preferring it to the government of the United States, which was then prosecuting him [to the knowledge of the defendant] [2] to obtain a judgment on 'a bond signed by him as surety for his father, William Hodson, conditioned for the faithful observance of the revenue laws in regard to distilling spirituous liquors. The court was in session when the mortgage was given, and the case of the government against the bankrupt on the calendar for trial, and the bankrupt, just before going to attend the trial, gave this mortgage to the defendants, and at the same time gave a deed of the property covered by it (which was all his real estate) to his father-in-law.

In view of these facts, there can be no doubt as to the bankrupt's intentions.[2] [He unquestionably intended to place his property so that it could not be reached by the government in case the suit went against him, and all this was done by him just after a decision of this court in the equity case, holding that William Hodson had violated, in his business as a distiller, the internal revenue law, and holding, also, that Charles W. Hodson, the bankrupt, had conspired with him and aided and assisted him in so doing. The case, therefore, against the bankrupt is so plain as not to require further notice. The officers of the bank, the defendant, knew all about the decision of the equity case. That decision had declared void a mortgage that the defendant claimed to hold as collateral security to this same debt. That decision had left the bank without security, and in order to get security they got this mortgage. They had notice of the suit also against Charles W. Hodson, which was about to be tried. They knew this was all his real estate, and that he had little personal property. They knew that if the government did obtain a judgment, that the only means of obtaining satisfaction was out of this property. That he knew that he had deeded it, at the same time of giving the mortgage, to his father-in-law. They knew that he at some time previously claimed to have put his father-in-law

in possession (of the property mortgaged), and was doing business in his father-in-law's name and at another bank, and the cashier says he supposed he had made that "change on account of the suit by the government," and he also says "he supposed he was annoyed by the government suit, and wanted to get out of the mill on that account." He also says he knew that the bankrupt could not pay the bank as the debt matured, nor the Ohio debt of $2,400. The president of the bank says "he did not know that he could not pay his debts, but he knew that he did not pay them." Indeed it is unnecessary to continue this matter at any greater length.] [2] The testimony leaves no room to doubt that the bank officers knew the situation of the bankrupt; that he was in a condition of insolvency, if the government obtained judgment; and I am equally satisfied that they took the mortgage to obtain a preference over the judgment of the government, if it obtained one. But to defeat the mortgage of the bank, as void under the bankrupt act, it is not necessary to find that the parties knew the condition of the bankrupt and his intentions; it is enough if the officers had reasonable cause to believe the bankrupt insolvent. And if they had notice of the various acts hereinbefore stated, they were sufficient to put them on inquiry, and they are chargeable with the knowledge which an investigation of the bankrupt's condition would have developed; so there can be no doubt that the mortgage is void, as contravening the provision of the bankrupt act. Toof v. Martin, 13 Wall. [80 U. S.] 40; Hall v. Wager [Case No. 5,951]; Wager v. Hall, 16 Wall. [83 U. S.] 584.

[The defendant's counsel claimed, on the argument, that the bankrupt was not then insolvent; in fact, that the mill was worth enough to pay the defendant, and the government and the Ohio debt, and the two or three other smaller debts owing by him. In view of the record in the bankruptcy case, I cannot assume that those were all the debts he owed; for there is a claim proven and allowed of over $20,000, besides those. It is intimated that that is not valid, or was not known to exist at the time; but, as the case stands at present, I cannot accept that view, but must take the case as it appears upon the record. But even if I were to adopt that conclusion, still I think the preponderance of testimony is against the assumption of the defendant. The weight of the testimony is that the mill was not worth, at that time, over $9,000 in cash, and as that was all his property, except, perhaps, a small amount of personal property. over and above exemptions, the presumption is that he intended to prefer this defendant, and as the defendant's officers knew that the mortgage covered all his property, and it not being enough to pay this and the government claim of over $5,000,

which was then in suit, they are chargeable with notice of his intentions.] [2] The defendants' counsel insist that there was no debt in favor of the government, or that whatever claim existed before the judgment in favor of the government was merged in the judgment, and hence the claim of the government, as proven, was not in existence, and that as to that claim the mortgage was good. I do not think this view is correct. The liability existed at the time of giving the mortgage, and the judgment afterwards was neither a payment nor satisfaction of it. There had been a breach of the conditions of the bond signed by defendants before that time, upon the occurrence of which the defendants' liability became fixed, and that liability has not been released or discharged, and it is the debt within the meaning of the bankrupt act, which is proven. In re Brown [Case No. 1,975]; In re Vickery [Id. 16,930]; In re Crawford [Id. 3,363.] [The defendant's counsel also claimed that as the bill alleged that Hodson, the bankrupt, had conveyed away the property to Barnes, one of the defendants, before the filing of the petitions. that the assignee had no interest in it or right to maintain this suit. Mr. Barnes, the grantee, is made a party defendant, and does not assert any title or right to it, but allowed the bill to be taken pro confesso. I think the bill taken as a whole fairly charges that the whole transaction of the bankrupt in giving the mortgage and deed was to avoid the provision of the bankrupt act. I do not see why the defendant should have a right to set up such a defense. If the mortgage to it was void as contrary to law, and created an illegal incumbrance upon the bankrupt's property as against his other creditor, the defendant has no right to hold it. And the assignee may. after that is set aside, proceed against the grantee to vacate the fraudulent deed. I do not think, therefore, that objection, particularly in the face of the proof that Barnes, the other defendant, has redeeded to the assignee so that he is in a position now to assert the right claimed in this case, is entitled to much consideration.] [2]

A decree will be entered declaring the mortgage void and requiring defendants to satisfy the same of record, and debarring them from proving their debt against the estate, the bank to pay the costs of this proceeding. [I, therefore, direct a decree in this case declaring said mortgage set up in the complaint to be void as creating an illegal preference and in violation of the bankrupt act, and directing and requiring the defendant, the bank, within twenty days after notice of the decree in the case, to satisfy said mortgage of record, and if they neglect, directing the register of Rock county, on according decree. to enter cancelled by decree of United States circuit court western district of Wisconsin, and debarring said bank

[2] [From 18 Int. Rev. Rec. 190.]                          [2] [From 18 Int. Rev. Rec. 190.]

from proving the debt against the estate of the bankrupt, and that the bank pay the costs to be taxed.][2]