CASTELLO, Administratrix, vs. LANDWEHR and others.

NEGLIGENCE. (1, 4) *When question of negligence for the jury.*

EVIDENCE. (2) *On what evidence the question as to what caused death may be submitted to jury.* (3) *Public statute.—Judical notice.* (7) *Subsequent acts af care not evidence of prior negligence.*

INSTRUCTIONS TO JURY. (5, 6, 8) *Bridging navigable streams, etc.*

MEASURE OF DAMAGES. (9, 10) *Damages for injury causing death.*

1. In an action under the statute for injuries to plaintiff's intestate, causing his death, where such injuries were alleged to have resulted from the negligent management of defendants' boat in attempting to pass a drawbridge over a navigable stream (said bridge and draw being in charge of the deceased), there was evidence tending to prove that the boat was small and easily managed; that the bridge was not difficult to pass; that the captain of the boat, who was at the wheel when the accident happened, was almost wholly unacquainted with the stream; that he approached the draw (which was on the east side of the river) diagonally from the west side, while the usual and only safe way of approach was on the east side, in a direct line with the current; and that it was apparent to persons on the shore, and others

Castello, Administratrix, vs. Landwehr and others.

on the boat, while she was yet at a distance from the draw, that she could not clear it. *Held*, that it was proper, on this evidence, to submit to the jury the question of the defendants' negligence.

2. The draw and a part of the bridge were knocked down by the boat, and deceased fell among the falling timbers, one of which lay across him when he was taken up. He became insensible almost immediately, and although no blood or bruises were seen upon his body, died in about three-fourths of an hour. There was no *post mortem* examination, and no surgeon testified on the trial. *Held*, that the question whether his death was caused by the accident was properly submitted to the jury.

3. Ch. 237, Laws of 1864, authorizing the town of Wrightstown to purchase the bridge in question, etc., is a public act, of which the courts take judicial notice without its being pleaded or proven, and is a legislative recognition of the legality of the bridge.

4. If proof of contributory negligence on the part of *the town* would prevent plaintiff's recovery in this case (which is not decided), the question whether it was negligence in the town to leave the bridge unprotected by piles, was *for the jury*, depending as it did on facts as to which there was conflicting evidence.

5. It was not error to refuse an instruction which included the following propositions: " that it was the duty of the authorities of Wrightstown, when authorized by law, to provide a safe and easy passage through said drawbridge; that the right of navigating a public stream is paramount to the right of bridging it; and that if the bridge was in the way of the safe and easy navigation of said stream, it must give way to the public right to such free navigation."

6. Under ch. 101, Laws of 1868 (which deprives the judge of the right to modify an instruction asked), it is not error to refuse absolutely an instruction containing numerous propositions, if one of them is incorrect.

7. The fact that the town, on repairing the bridge after the accident, protected it with piles, etc., could not properly be considered by the jury as evidence of previous negligence in omitting such protection. The town might have subsequently used *extraordinary* care, but was liable only for the lack of ordinary care.

8. The deceased being engaged in a lawful employment, there was no error in an instruction that " defendants were bound to use reasonable care and skill in passing through the stream, whatever its width," and that " even though the draw was so constructed as to make the bridge a nuisance, defendants had no right to run into the bridge negligently or unskilfully."

9. In an action under the statute, brought by the widow of the deceased,

suing as administratrix, the damages (if any) which she is entitled to recover, will include the value of her support and protection, and the support and education of her children, by the deceased during the time he would probably have lived and supported her but for the accident in question; and the jury may also consider "the addition that the earnings of the deceased would probably have made to his property, had he continued to live, and the reasonable expectation which plaintiff had of pecuniary advantage by ultimately receiving a share of such earnings as one of his heirs," and damages may be given "with respect to that expectation being disappointed, and to the probable pecuniary loss resulting therefrom."

10. Upon the facts of this case, an allowance to the plaintiff of $1,500 damages is *held* not excessive.

APPEAL from the Circuit Court for *Brown* County.

The defendant appealed from a judgment in favor of the plaintiff. The case is stated in the opinion.

*Hudd & Wigman*, for appellants, contended that what constitutes negligence or reasonable care is a question of law for the court (7 Met., 274; 19 Conn., 571; 4 Zab., 277; 11 Wis., 160; 18 id., 331); that if the question is one for the jury, there was not, in this case, enough evidence to go to the jury tending to show that the accident happened through defendants' negligence, without negligence on the part of the deceased (7 Wis., 527); that *any* negligence, however slight, on his part would defeat a recovery (21 Wis., 256, 372; Shearm. & Redf. on Neg., ch. 32), and this, even though there was the *greatest* negligence on defendants' part (24 N. Y., 430); that deceased was bound to use care *proportioned to the unsafe condition of the draw* (17 Wis., 428; 30 Pa. St., 454); that he was liable for the fault of his principal, the town of Wrightstown, in providing unsafe machinery (4 Mass., 422, 294); that if there were defects in the draw contributing to the injury, the burden was upon plaintiff to show that the deceased or the town did not know or suppose that such defects existed, and was in no fault for not knowing of their existence (42 N. H., 197). 2. There was no sufficient proof of the cause of the death. 3. A bridge maintained over a navigable stream, without authority of a

special act of the legislature, is a public nuisance. The plaintiff was bound to show that the bridge was a lawful structure; for otherwise the deceased was a trespasser, and that would prevent a recovery. 4 N.Y., 349; 20 Ill., 478; Cro. Jac., 158; 1 Cow., 78; 4 Wis., 454; 10 Mass., 70; 6 Cow., 518; Shearm. & Redf. on Neg., 281. 4. On the measure of damages they cited R. S., ch. 135, sec. 13; 21 Wis., 372.

*Hastings & Greene*, for respondent, relied upon ch. 237, Laws of 1864, as establishing the lawfulness of the bridge. 2. On the question of contributory negligence they argued, (1.) That the fact that the damage to the bridge would not have happened had there been piles to protect the draw, does not prove that there was negligence on the part of the town of Wrightstown in not placing them there. The town is not to be charged with negligence because it did not provide against the gross negligence or unskilfullness of the defendants. *Cook v Champ. Transp. Co.*, 1 Denio, 91, 100, 101; *Carroll v. N. Y. & N. H. R. R.*, 1 Duer, 571, 580, 583; *Fero v. Buffalo & State Line R. R.*, 22 N. Y., 214; 1 Hillard on Torts, 161, sub. 4. (2.) That the fault or wrong of a third person cannot affect the injured party, where such person is in no way subject to the directions of the injured party. Shearm. & Redf. on Neg., sec. 46; 19 N. Y., 341; 46 Pa. St., 151. If, through the fault of the town, the bridge was a place of danger, still the deceased had a right to assume that the defendants would act with due care. He assumed the risk of injuries from collisions occurring with the exercise of ordinary care on the part of others; but not of those flowing solely from the extraordinary fault and negligence of others. *Carroll v. N. Y. & N. H. R. R.*, *Cook v. Trans. Co.*, and *Fero v. R. R.*, *supra*; 29 N. Y., 383, 391; Shearm. & Redf., sec. 31. Defendants, knowing the situation of the bridge, and that deceased was upon it, were bound to use reasonable care to avoid the injury. *Button v. R. R.*, 18 N. Y., 248, 258; 4 Ind., 95; 9 id., 397; 3 Ohio St., 172; 19 Ill., 499. 3. To the point that there was sufficient evidence upon which the jury might find that the

death of the deceased was caused by the wrongful acts of the defendants, they cited 1 Greenl. Ev. (Redf. ed.), sec. 13 ; *Laville v. Lucas*, 13 Wis., 617 ; *Eaton v. Joint School Dist.*, 23 Wis., 374. 4. On the question of damages they cited *Armstrong v. R. R.*, 11 Jurist, 758; *McIntyre v. R. R.*, 37 N. Y., 287 ; *Tilley v. R. R.*, 29 id., 252, 287, and 24 id., 471 ; Shearm. & Redf. on Neg., sec. 613.

LYON, J. The plaintiff is the administratrix of the estate, and the widow, of Patrick Castello, deceased. It appears that the deceased was the bridge-tender of a bridge across Fox river at Wrightstown, in the county of Brown. The bridge was constructed with a draw, and he was employed by the town of Wrightstown to open the same for the passage of boats navigating that stream. On some day in the fall of 1869, he opened the draw for the passage down the river of the steamer "Morning Star," which was then owned and operated by the defendants. The boat, in making the passage through the opening in the bridge, ran against the draw, knocked it down, and also knocked down the portions of the bridge or draw known as the cross-beam and shears. The deceased, who was trying to escape, seems to have been struck by some of the falling timbers. At least he fell amongst those timbers, and one piece was lying across some part of his person. He became insensible almost immediately, and, although no blood or bruises were seen upon his body, he died in about three-fourths of an hour *after the* accident. No *post mortem* examination of his body was made, and no surgeon was examined as a witness upon the trial. This action was brought under the provisions of the Revised Statutes, chap. 135, secs. 12 and 13, to recover damages for the pecuniary injury resulting to the next of kin of the deceased by reason of his death ; and the complaint states facts sufficient to constitute a cause of action. The plaintiff had a verdict for $1,500 damages, for which sum and costs judgment was duly entered in her favor; and from such judgment the defendants have appealed to this court.

At the close of the testimony introduced by the plaintiff upon the trial, and after she had rested her case, the defendants moved for a nonsuit on the following grounds :

"1st. The plaintiffs have failed to show any negligence on the part of the defendants or their agents or servants."

"2nd. The plaintiffs have failed to show that the death of Castello was the result of the defendants' acts."

"3d. There is no proof before the court that the town of Wrightstown had authority to build a bridge across the Fox River, a navigable stream, or, if they had such authority, that the bridge was built according to law."

"4th. That from plaintiff's proofs it appears that Castello was employed by the town to tend the bridge, and that the town of Wrightstown was guilty of negligence in not driving piles to protect the draw."

The motion for a nonsuit was overruled by the court; was renewed after all of the testimony had been put in on both sides; and was again overruled; and due exceptions were taken to such rulings. Was this error?

We will examine in their order the several grounds upon which the motions for a nonsuit were based.

1st. There was testimony to the effect that the "Morning Star" was a small boat, and easily managed, and that the bridge in question was not a difficult one to pass ; that the captain of the boat, who was at the wheel when the accident occurred, was almost entirely unacquainted with the river—indeed, that this was his first trip thereon ; that he approached the bridge or draw from the wrong direction, that is, diagonally from the *west* side of the river, the draw being near the east end of the bridge ; that the usual and only safe way of running through the draw or opening in the bridge, is to run to it in a straight line on the *east* side of the river; and that it was apparent to persons on the boat and on shore, when she was yet some distance therefrom, that she could not clear the draw.

We think this testimony tends to show negligence on the part of the defendants, and on the part of the captain of the boat, for whose negligence the defendants, who employed him, and who owned and operated the boat, are legally liable; and therefore, that the court properly refused to nonsuit the plaintiff upon that ground.

2d. The testimony tended to prove the facts above stated in relation to the cause and manner of Castello's death; and there was, clearly, sufficient evidence tending to show that his death was caused by the collision of the boat with the bridge, to make it the duty of the circuit court to submit to the jury the question as to whether the death was thereby caused.

3d. Chapter 237, Laws of 1864, authorizes the town of Wrightstown to purchase the bridge in question, to issue bonds therefor, and to levy taxes to pay the same. This act is a legislative recognition of the legality of the bridge and the right of the town to maintain it. This is a public act, and the court properly took judicial notice of its existence, without the same being pleaded or proved. *State ex rel. Cothren v. Lean*, 9 Wis., 279; *Clark v. Janesville*, 10 id., 136; *Rochester v. Alfred Bank*, 13 id., 432; *Berliner v. Waterloo*, 14 id., 378.

This ground of the motion for a nonsuit was, therefore, properly overruled, inasmuch as it was based upon the erroneous hypothesis that the act of 1864 was a private act, and that, to be available for the purpose of showing that the bridge was a lawful structure, it should have been pleaded and proved.

4th. If we concede, for the purpose of the argument, that the plaintiff cannot recover in case the town was guilty of negligence (a point which we do not here decide), then we are of the opinion that it was a question of fact for the jury, whether, under all of the circumstances, the omission of the town to protect the draw by putting in suitable piles for that purpose, was or was not negligence on the part of the town, and that the circuit court was correct in refusing to hold, as a proposition of law, that such omission was negligence.

It is doubtless true, that where the facts bearing upon it are all conceded, the question of negligence is one of law, to be determined by the court. But in this case there are many things to be considered in determining whether the town was negligent; such as the force and direction of the current; the effect of the wind thereon; the position of the. draw with reference to the channel: the facility with which boats could safely make the passage through the draw. These, and other facts which it is not necessary to enumerate, were to be deter-. mined before the court could properly hold that the failure thus to protect the draw was negligence.

The testimony on some of these subjects was conflicting, and the facts could only be settled and determined by the jury.

We conclude, therefore, that the motions for a nonsuit were properly overruled by the circuit. court.

The remaining questions presented by this appeal arise upon the refusal of the court to give certain instructions to the jury as requested by the defendants, and on certain other instruc- tions given at the request of the plaintiff. Some of these questions have already been discussed, and will require but a passing notice.

The following are the instructions which were asked on be- half of the defendants, and which the court refused to give. They will be stated and commented upon in their order:

1st. "If the drawbridge might have been secured by means of piles or other safeguards, so as to prevent the shoving off of the same, and if said drawbridge was shoved off for want of such piles or safeguards, and if the authorities of Wrightstown, owning and controlling said bridge, neglected to providethe same, it was such negligence as prevents a recovery in this action."

This instruction was properly refused. We have already seen that the most the defendants were entitled to, was to have the question submitted to the jury, whether, in view of all the facts, the omission of the town to put in piles and safeguards: to protect the draw was negligence.

VOL. XXVIII.—34

2d. "That it was the duty of the authorities of Wrightstown, when authorized by law, to provide a safe and easy passage through said drawbridge. The right of navigating a public stream is paramount to the right of bridging the same. If the bridge was in the way of the safe and easy navigation of the said stream, the bridge must give way to the public right of the free navigation of the river in question."

This instruction asserts certain abstract propositions, the correctness of some of which, as legal propositions, may well be doubted. It was not error to refuse it.

3d. If the authorities of Wrightstown, in repairing said bridge, after the same had been damaged, as testified to in this case, did place the piles and safeguards to prevent the throwing off of said drawbridge, it may be considered by the jury as evidence that the same was neglected to be done before, and was a needed and proper proceeding on the part of said town to make said drawbridge safe and secure."

The purport of this instruction is, that inasmuch as the town placed piles and safeguards to protect the draw after Castello was killed, that was a fact from which the jury were at liberty to infer that the town was guilty of negligence in not placing them there before the accident. It is perfectly clear that no such inference can properly be drawn therefrom. If the fact admitted of such an inference, then the fact that a person at a certain time commences using and exercising *extraordinary* care in a given case may be used against him to prove that before such time he had failed to use *reasonable* and *ordinary* care.

4th. "That death as the result of a blow or fall is a question of fact. If there were no visible injuries on the person of the deceased Castello, and no medical testimony showing the cause of said Castello's death, except that he fell on the bridge, and some timber fell on his feet, it is no sufficient evidence that death was caused by the acts of the defendants. If Castello died then and there of mere fright, heart disease, or any sudden ailment of the body, the defendants are not liable therefor;

and it is part of the plaintiff's case to show the real cause of Castello's death."

We have already held that there was sufficient evidence upon which to submit it to the jury, as a question of fact, whether the death of Castello was caused by the collision of the " Morning Star" with the bridge, or otherwise. Had this instruction been given, it would have been equivalent to directing the jury to find for the defendant, because of the failure of the plaintiff to produce any evidence tending to show that the death of Castello was caused by such collision.

5th. "That the Fox River is a navigable stream, and cannot be bridged without the consent of the legislature of this state, and then only in the manner provided by law. It does not appear in this case that the bridge erected at the point on Fox River where it is claimed that this accident happened, was built by lawful authority; therefore the defendants were not bound to take any care to run in any particular channel, or to avoid striking the bridge found there. If defendants did with their boat come in collision with said bridge, and did damage the bridge or draw in question, still the plaintiff cannot recover, because the said bridge was an unlawful obstruction to the free and full navigation of said river; and if he, Castello, met his death while engaged in an unlawful business, and as an agent of the authorities maintained the unlawful obstruction, the plaintiff cannot recover, and your verdict must be for the defendants."

This instruction is erroneous in at least one particular, and was therefore properly refused. It asks the court to say to the jury that " it does not appear in this case that the bridge erected at the point on Fox river where it is claimed this accident happened, was built by lawful authority." We have already seen that the bridge was a lawful structure ; and as the statute (Laws of 1868, chap. 101) required the judge to give or refuse the instructions as a whole, and deprived him of the power to modify it, or to eliminate the objectionable parts, it was not error to refuse the whole instruction. We do not pass upon the

balance of the instruction. One erroneous proposition in it is fatal to it, and it is unnecessary to examine it farther.

We fail, therefore, to find any error in the refusal of the circuit court to give the instructions asked on behalf of the defendants.

The instructions given at the request of the plaintiff, and which counsel for defendants contend are erroneous, are as follows:

" 8th. If you find for the plaintiff, in assessing her damages, you must consider the value of the support and protection of the plaintiff by her husband during the time which he would probably have lived and supported and provided for her, but for his death from the acts of the defendants."

" 9th. In case you find for the plaintiff, in assessing her damages, you are not limited to the simple value of the support and protection of herself and the support and education of her children, but you may also consider the increase that the earnings of Castello would have made to his wealth and property, had he continued to live, and the reasonable expectation which the plaintiff had of pecuniary advantage by ultimately receiving a share of such earnings, as one of his heirs or next of kin, and damage may be given in respect to that expectation being disappointed and the probable pecuniary loss resulting therefrom. But you must be satisfied that pecuniary injury will probably result as the proximate damages of such death."

" 10th. The defendants and their captain were bound to use reasonable skill and care in passing through the draw, whatsoever its width. Even though the draw was constructed so as to make the bridge a nuisance, the defendants had no right to run into the bridge negligently or unskillfully."

The rule of damages given in these instructions seems to be in accordance with that laid down by this court in *Potter v. The Chicago and Northwestern R'y Co.*, 21 Wis., 372; *Same case*, 22 id., 615.

The damages awarded by the jury were not excessive. From

the facts of this case, as established by the evidence, the jury might well find that the pecuniary damage which the plaintiff had sustained, and which it was reasonably probable she would sustain, by reason of the untimely death of her husband, was $1,500.

Neither do we find any error in the last instruction. The deceased was lawfully engaged in a lawful employment, and the captain of the boat was under legal obligation to use reasonable and ordinary care to avoid the accident which the jury have found caused his death.

Failing to find any error in the rulings and decisions of the circuit court, we must affirm the judgment.

*By the Court.*—Judgment affirmed.