THE YELLOW RIVER IMPROVEMENT COMPANY vs. ARNOLD.

CONSTITUTIONAL LAW: VALIDITY AND CONSTRUCTION OF LOCAL STATUTE. *(1, 2) What a local statute: Const. of Wis., art. IV, sec. 18, and art. VII, sec. 21. (3) Act amending local statute: rule as to title. (4, 5) Title of local statute: what provisions it may cover. (5) When remainder of statute valid, though a part void. (6, 7) Plaintiff's charter construed.*

PAYMENT: *(8) Application of general payments on account.*

1. An act of the legislature may be a "general law" (not taking effect until published), within sec. 21, art. VII of the state constitution, and still be "local," within the meaning of sec. 18, art. IV, so that it must embrace but a single subject, which must be expressed in its title.

2. The act published as ch. 170, P. & L. Laws of 1857, entitled "An act to incorporate the Yellow River Improvement Company," besides creating the company with ordinary corporate powers, authorized it to improve said river in two specified counties, for the purpose of facilitating the

The Yellow River Improvement Co. vs. Arnold.

running of logs, etc., and, after expending a certain sum for that purpose, to collect tolls on logs, etc., floated down the river. *Held*, that it was a *local* act; but whether private or general is not here determined.

3. Provisions which might constitutionally have been included in a local law, under its actual title, may afterwards be enacted as amendments thereto, without otherwise stating the subject of the amending act than by describing it as an act to amend such former act (reciting its title).

4. Under the actual title of the act of 1857, above mentioned, might properly have been included a grant of power to the corporation to run, drive, sort and sack logs on the Yellow river, after the improvement thereof, and to charge tolls for so doing; such business having a natural and legitimate connection with the improvement of said river. *Mills v. Charleton*, 29 Wis., 400, and other cases in this court.

5. *It seems*, also, that the act of 1857 might have contained a clause repealing the incorporation of a previous company for the same object, without being liable to the objection that it embraced more than one subject, or did not sufficiently express the subject in the title. But if otherwise, the invalidity of such a repealing clause in the first amendatory act (ch. 398, P. & L. Laws of 1868) does not render its other provisions invalid, as they constitute, without the repealing clause, " a complete and sensible enactment, capable of being executed."

6. Sec. 1, ch. 116, P. & L. Laws of 1871, provides that " all claims, sums and demands for running, driving, assorting, or logging in and delivering, any logs, timber or lumber, *or for any other services to the same*, which said company may have or be entitled to receive, or that may accrue or be owing to it, under the provisions of this act, or that of which this is amendatory, or any other law, shall be *a lien* upon such logs," etc. *Held*, that under this provision the company has a lien for *tolls* accruing under the original charter, and for *all* services on logs, etc., for which it can recover compensation.

7. By the by-laws of the company, the foreman of the main drive is authorized, when he can do so without endangering the general drive, to assist with his men in bringing the logs of any member of the association *from the tributaries* of Yellow River *into the main stream*, and to charge such member with the value of such services. *Held*, that the company *can recover* for services of the character here described, rendered at the request of a member.

8. Credits given on account, in the absence of any agreement to the contrary, must be applied to the extinguishment of the indebtedness first incurred.

APPEAL from the Circuit Court for *Juneau* County.

The defendant appealed from a judgment in favor of the plaintiff. The case is fully stated in the opinion.

For the appellant, there was a brief by *John Turner*, his attorney, with *L. S. Dixon*, of counsel, and oral argument by *Mr. Dixon*. They argued the following, among other points: 1. Plaintiff bases its claim upon the acts amendatory of its charter. The first of these, ch. 398 of 1868, is entitled " An act to amend ch. 170 of the private and local laws of 1857, entitled ' An act to incorporate the Yellow River Improvement Company,' approved March 2, 1857." Secs. 2–7 purport to confer on said company powers, privileges and franchises of the same kind, and to be exercised in the same manner and to the same extent, as those then and theretofore possessed and exercised by the Yellow River Log-Driving Association under ch. 131, P. & L. Laws of 1864, and its amendments. The franchises thus attempted to be conferred upon the Yellow River Improvement Company are enacted as new and independent provisions of its charter, although copied literally from the then existing charter of said Log-Driving Association. The 8th section purports to repeal the original charter of the Yellow River Log-Driving Association, and the several subsequent acts amendatory thereof. This act of 1868 contravenes sec. 18, art. IV of the state constitution, which declares that "no private or local bill . . . . shall embrace more than one subject, and that shall be expressed in the title." It embraced two subjects: one expressed in the title, i. e., the amendment of the charter of the Yellow River Improvement Company; the other not so expressed, to wit, the repeal of the charter of the Yellow River Log-Driving Association. These were *distinct* subjects of a private or local nature, which could not have been embraced in one bill, even if both had been expressed in its title. The charter of each corporation was a separate local subject of legislation; and the business in which each could engage, under the franchises conferred upon it, was distinct and separate from that of the other. The business of driving, sorting, hauling, sacking and delivering logs and lumber upon a river is as disconnected from that of improving the naviga-

tion of the river, as the running of a line of boats upon a canal, or a line of stages upon a turnpike, from that of constructing the canal or turnpike. Two corporations for these objects could no more be created by a single bill, under the constitution, although both subjects were properly expressed in the title, than could a railroad company and an insurance company, or a banking corporation and a manufacturing corporation. And as both could not be created by a single bill, so, after both had been constitutionally created, neither could be destroyed, or its franchises modified or repealed, by a bill professing to operate upon both. The charter of the Log-Driving Association could be repealed only by a bill introduced for that purpose and expressing that as its subject in the title. The bill in question expressed no such subject in its title, but another and entirely different one, to which it also pertained; and it was therefore doubly obnoxious to constitutional objection. It was as if, under a bill to amend the charter of the Chicago, Milwaukee & St. Paul Railway Company, and so entitled, the legislature should insert a section repealing the charter of the Chicago & Northwestern Railway Company; or as if, in a bill to amend the charter of an insurance company, and so entitled, it should attempt to repeal the charter of a bank. To the point that the charters in question were private and local, or certainly *local* laws, within the meaning of the constitution, counsel cited *People v. Supervisors*, 43 N. Y., 10; *People v. O'Brien*, 38 id., 193; *Gaskin v. Meek*, 42 id., 186; *People v. Hills*, 35 id., 449; *People v. Denahy*, 20 Mich., 349; *Durkee v. Janesville*, 26 Wis., 697; *Phillips v. Town of Albany*, 28 id., 340; *Mills v. Charleton*, 29 id., 400; *Evans v. Sharp*, id., 564; *Single v. Supervisors*, 38 id., 363. 2. The act of 1868 being void, those of 1869 and 1871, purporting to be amendments of it, must fall with it. Such amendments cannot give validity to the original act, both because that was not the legislative intent, and because the legislature had no power thus to evade the constitution. *Barden v. Supervisors*, 33 Wis., 445,

449; *Town of South Ottawa v. Perkins*, 94 U. S., 260, 270, 271. 3. Acts passed in violation of this constitutional provision are utterly void, and no part of them can be sustained for any purpose. But if that were otherwise, still secs. 2–7 of the act were undoubtedly enacted upon the supposition that sec. 8 was valid as a repeal of the charter of the Log-Driving Association. The legislature could not have intended to confer upon two corporations precisely the same franchises, where the exercise of the one would necessarily destroy the exercise of the other. In such a case, were the legislature to attempt a second grant where one already existed, it would seem that such second grant must fail for want of power to make it. *Sellers v. Union Lumbering Co.*, 39 Wis., 525. But, however that might be, it is obvious that the legislature intended nothing of the kind here, and the act must fail upon the principle established by *Slauson v. Racine*, 13 Wis., 398; *Lynch v. Steamer " Economy*," 27 id., 69; *State ex rel. Walsh v. Dousman*, 28 id., 541. 4. As to the third item of plaintiff's demand, which is for tolls on logs, the only remedy given for their collection was that specified in sec. 5, ch. 170, P. & L. Laws of 1857, which was *by seizure of the logs by process of attachment, and the holding of the same by such process until the tolls were paid.* The statute gives no lien for the tolls, no right of action to be proceeded in to judgment, and no authority for the sale of the property seized. 5. There was no statute giving a lien for the $153 demanded for labor performed on the east branch. 6. The judgment includes $1,201, balance of old accounts against the defendant, the lien for which (if any ever existed) had been lost by the lapse of time and neglect to file petition, etc. It appeared on the face of the account rendered to defendant, and produced and proved before the court, of which this item of $1,201 formed a part, that the supplies furnished by defendant, the wages paid to men employed by him, and the orders paid by him, in aid of the drive of 1876, had never been applied by plaintiff in payment

of this balance of the old account, as alleged by plaintiff. Not only was there no evidence of any attempt to make such application, but it was incompetent for plaintiff to make it. The evidence shows that the invariable custom and mode of doing business between the company and the owners of logs was to credit such owner with the supplies and men furnished and orders paid, against the expenses of the drive for which they were furnished and paid. And so the defendant in this case was credited in fact, as appears on the face of the account sued upon. Moreover, the plaintiff having made no application, defendant was entitled to have the application made to *that part of the account for which plaintiff had a lien.* 1 Bouv. Inst., sec. 834, and cases there cited.

For the respondent, there were briefs by *Winsor & Veeder*, its attorneys, with *G. C. Prentiss*, of counsel, and oral argument by *Mr. Veeder* and *Mr. Prentiss.* They contended, among other things, 1. That the act of 1868 does not embrace more than one subject, and that is sufficiently expressed in the title. Had the provisions of that and subsequent amendatory acts been embraced in the original act of 1857, it could not have been thought that incongruous subjects had been grouped in one law. The evidence shows that the stockholders in the plaintiff company and those of the Log-Driving Association were the same. The operative powers of the association were transferred to the plaintiff company, and the useless charter of the association was thereupon repealed. The addition to an act, of a provision which declares all acts and parts of acts conflicting with it to be repealed, does not add another subject to the law, and so render it unconstitutional. *State v. Supervisors*, 2 Pinney, 552; *Phillips v. Town of Albany*, 28 Wis., 340; *Mills v. Charleton*, 29 id., 400; *Evans v. Sharp*, id., 564; *Lawson v. M. & N. Railway Co.*, 30 id., 597; *Gabbert v. Jeffersonville R. R. Co.*, 11 Ind., 365; *Guilford v. Cornell*, 18 Barb., 615; Cooley on Con. Lim., 143. 2. That ch. 398 of 1868 is not a private or local law within

the meaning of sec. 18, art. IV of the constitution. The act of 1857, to which it is an amendment, is declared by one of its own provisions to be a public act; and this declaration of the legislature is entitled to great weight. Moreover, the provisions of the law involve public interests of such magnitude as to give it the character of a public act. *State ex rel. Cothren v. Lean*, 9 Wis., 286; *Clark v. Janesville*, 10 id., 135; *State ex rel. Voight v. Hoeflinger*, 31 id., 257; *W. R. Imp. Co. v. Manson*, 43 id., 255. 3. That defendant had admitted that judgment must go against him for the whole amount of the demand, in case plaintiff had a lien for any sum.

[Counsel on both sides discussed the questions, whether defendant was estopped from denying plaintiff's corporate powers and franchises; and whether, where an association of persons has in fact exercised corporate powers, the existence of such corporation can be inquired into by any other person than the government.]

TAYLOR, J. This action was brought by the respondent to enforce a lien which it claims upon certain logs and lumber belonging to the appellant, for driving, sacking and sorting said logs, and for tolls on the same. This claim is made under the provisions of ch. 170, P. & L. Laws of 1857, as amended finally by ch. 116, P. & L. Laws of 1871.

The claim of the company is resisted by the appellant, mainly upon the ground that the acts amending ch. 170, P. & L. Laws of 1857, are unconstitutional and void, and consequently the company had no lawful authority to do the work by which it is claimed the indebtedness of the appellant accrued to the company, and no right to enforce the collection of the indebtedness in the method pursued in this action. It is admitted by the counsel for the company, that if the laws amending said ch. 170 are unconstitutional and void, there would be no authority for the proceedings instituted in this action, although they claim the company might recover the

amount due it in an action for labor and services rendered for defendant at his request.

Ch. 170, P. & L. Laws of 1857, was entitled " An act to incorporate the Yellow River Improvement Company." This chapter incorporated a stock company, giving it all the ordinary powers of a corporation, particularly authorizing it to improve the Yellow river in the counties of Wood and Juneau, for the purpose of facilitating the running of logs, lumber, timber, lath and shingles, and conferring upon such company ample powers for that purpose. It also conferred on the company the right, after spending at least the sum of five thousand dollars in the improvement of said river, to collect tolls at a fixed rate upon all logs, timber, lumber, lath and shingles floated down the same.

This act was amended by ch. 398, P. & L. Laws of 1868, ch. 186 P. & L. Laws of 1869, and ch. 116, P. & L. Laws of 1871. Ch. 398, P. & L. Laws of 1868, was entitled " An act to amend ch. 170 of the Private Laws of 1857, entitled an act to incorporate the Yellow River Improvement Company." Ch. 186, P. & L. Laws of 1869, is entitled " An act to amend ch. 398 of the Private and Local Laws of 1868, entitled an act to amend ch. 170 of the Private Laws of 1857, entitled an act to incorporate the Yellow River Improvement Company; " and ch. 116, P. & L. Laws of 1871, is entitled " An act to amend ch. 186 of the Private and Local Laws of 1869, entitled an act to amend ch. 398 of the Private and Local Laws of 1868, entitled an act to amend ch. 170 of the Private Laws of 1857, entitled an act to incorporate the Yellow River Improvement Company."

These several amendatory acts were intended to confer, and did upon their face confer, upon the *Improvement Company* the right to run, drive, sort and sack logs on said river, and charge the owners thereof certain sums for so doing; and the first amendatory act, in addition, repealed an act incorporating a log-driving association which had been theretofore incor-

porated for the purpose of running, driving, sorting and sacking logs on the same river.

It is insisted by the learned counsel for the appellant, that the amendatory act of 1868 is void, because it violates the provisions of sec. 18, article IV of the constitution, which declares that "no private or local bill which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title;" and that, the first amendment being void, all the subsequent amendments are also void.

We agree with the counsel for the appellant, that this act, and the several acts amendatory thereof, must, under the decisions of this court, be held to be a *local* act, within the meaning of the constitutional provision above referred to. This court has repeatedly held that, although a law may be a general law within the meaning of that part of sec. 21, article VII of the constitution, which provides that "no general law shall be in force until published," it may also be a local law within the meaning of sec. 18, article IV. The following are some of the cases in this court defining what are general laws within the provision of the constitution requiring their publication before they can take effect: *The City of Janesville v. M. & M. R. R. Co.*, 7 Wis., 484; *Re Boyle*, 9 Wis., 264; *State ex rel. v. Lean*, 9 Wis., 279; *Clark v. City of Janesville*, 10 Wis., 136, 191; *Mills v. Gleason*, 11 Wis., 476; *The Town of Rochester v. The Alfred Bank*, 13 Wis., 432; *Berliner v. Town of Waterloo*, 14 Wis., 378; *Mills v. Town of Jefferson*, 20 Wis., 50; *Castello v. Landwehr*, 28 Wis., 522. Many other cases will undoubtedly be found in our reports; but these are sufficient to show that very many acts which are in their nature local, are yet held to be general within the meaning of the provision of the constitution last referred to.

It is unnecessary to repeat the reasons given to sustain the decisions of this court in the cases above cited. It is sufficient for the purposes of this case to show that this court has held that certain acts are general laws within the meaning of

the provision of the constitution above cited, and that many acts which under the decisions above cited must be held to be general acts, are also held to be local acts within the meaning of sec. 18, art. IV of the constitution. See *Durkee v. The City of Janesville*, 26 Wis., 697; *Mills v. Charleton*, 29 Wis., 400; *Phillips v. The Town of Albany*, 28 Wis., 340; *Lawson v. The Milwaukee & Northern Railway Co.*, 30 Wis., 597. In the case of *Durkee v. The City of Janesville, supra*, an act of the legislature was declared void as contravening the provisions of sec. 18, art. IV of the. constitution. The title of the act was, "An act to legalize and authorize the assessment of street improvements and assessments." The provisions in the act itself related solely to certain street assessments in the city of Janesville, and undertook to legalize the same. It is clear that, within the decisions above cited, this was a general law, and would not take effect until published; but it was also held to be a local law within the meaning of the constitution; and, because the subject was not expressed in the title, it was held void. Justice COLE, who delivered the opinion, says: "The title of the law under consideration is, 'An act to legalize and authorize the assessment of street improvements and assessments.' And although the sole and only object of the law is to legalize and render valid certain proceedings of the common council of the city of Janesville, yet there is not the least reference in the title to the locality in which the law is to operate. And we agree fully with the counsel of the respondent in the view that the subject of a local act cannot be expressed in the title without a reference to the place over which it is to operate being made therein." In the case of *Castello v. Landwehr, supra*, it was held that a law authorizing the town of Wrightstown to purchase a bridge and issue bonds therefor, and levy taxes to pay the same, was a general law within the decisions first above cited; yet clearly, within the decision in *Durkee v. The City of Janesville*, it was also a local law; and the same

must be the case in respect to special laws authorizing a particular town or city to issue bonds to aid in the construction of railroads or other public improvements, and to levy taxes for that purpose. Such laws are both general and local within the meaning of the constitution. The fact that a law is a general law undoubtedly negatives the idea that it is a private law, but does not necessarily negative the idea that it is a local law within the meaning of the constitution. Without determining whether the law in question in this case is a private law, we have no hesitation in holding that it is a local law; and, to be enforced, its title and its subject must conform to the provisions of the constitution above referred to. The business of the corporation created by the act of 1857 is confined strictly to a particular locality, viz., certain parts of the Yellow river. The object of its creation in the first instance was to improve the navigability of a portion of that river, so as to aid and facilitate the running of lumber, timber, etc., down the same, and to authorize the company to charge certain tolls upon such lumber and timber, as a compensation for making such improvements.

In order to determine whether the subsequent amendments of the "act to incorporate the Yellow River Improvement Company" are violations of the constitution, we must inquire whether the provisions contained in such amendments could have been embodied in the original act of incorporation without violating the constitution. If, under the original title of the act incorporating the company, it would have been competent to confer upon the corporation the powers contained in the amendments, then there can be no doubt of the power to confer them upon it by way of amendment to such act, and under the title of "an act to amend" the original act, reciting its title. Any additional powers may be given to the company under an amendatory act, which could have been constitutionally conferred under the original act. This was so held in *Morford v. Unger*, 8 Iowa, 82. In that case, under an act

entitled "an act to amend the act to incorporate the city of Muscatine," the limits of the city were extended; and the court held the law constitutional. In *Brandon v. The State,* 16 Ind., 197, the court say: "If the title of the original act in question is sufficient to embrace the provisions in question, it is unnecessary to inquire whether the title of the amendatory act would of itself be sufficient."

The real question in the case is, whether it is competent, under the act entitled "An act to incorporate the Yellow River Improvement Company," to confer any powers upon said company except such as relate solely to the improvement of the navigation of the river and the right to demand tolls for the use of such improvements. It will not be questioned that under such title it is not only competent to provide for the manner of incorporating the company, but the business which the company may perform after its incorporation may be inserted in the law without violating the constitutional provision. The subject of such an act is the corporation to be organized, and this necessarily includes all things necessary to form the corporation, and to carry on the business for which it is organized, together with a statement of the business to be carried on by such corporation.

Under this act incorporating the Yellow River Improvement Company, the question to be determined is, whether the running of logs and lumber by the company on the river, after the same has been improved by it, with the right to demand pay therefor, is so disconnected with and foreign to the business of improving the river as to form a new subject, which cannot be legitimately connected with the business of the improvement company created by the act. We are of the opinion that the title of the act is not so narrow and restricted as to prevent the conferring of any powers upon the company except such as relate strictly to the improvement of the river and the receiving of tolls for the use of such improvement.

It is probably true that when the title of an act incorporating a company indicates the business to be performed by such company, it would be a violation of the constitutional provision in question, to provide in the act for the carrying on of a business by the corporation entirely disconnected with and different from that indicated in the title. The rule is, that any business which is properly connected with the business indicated by the title of the act, may be authorized to be done by the act, without violating the constitutional rule that it shall contain but one subject.

This rule is very clearly illustrated and approved in the opinion of the court by the learned Chief Justice Church in the case of *The People v. Briggs*, 50 N. Y., 553. In this case, under an act entitled " An act to amend the several acts in relation to the city of Rochester," it was held that any matter which related to the business and government of the municipality might be inserted; and the rule stated was, that " when the title of a local or private act expresses a general purpose or object, all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act, and are germane to the title." The learned chief justice says: " But when the subject is general, comprehending all the functions of the corporation, provisions in relation to any of them, or necessary or pertinent to accomplish and carry out any of them, may be, so far as this constitutional clause is concerned, incorporated in the bill. No one can be misled by such title, and legislators and people are alike notified of the purpose of the act." In the case of the *Matter of the petition of Mayer*, 50 N. Y., 504, the same learned judge says: " The constitution does not require that the title of an act should be the most exact expression of the subject which could be invented. It is enough if it fairly and reasonably announces the subject of the act. . . . . . A subject is that of which any thing may be affirmed or predicated, and if

the various parts of this act have respect to or relate to local improvements, the act is not obnoxious to the constitutional objection interposed, and the degree of relationship, if it legitimately tends to the accomplishment of the general purpose, is not material. . . . . . Whether the description of the subject may not be more specific, is a subject for the legislature. It seems to me that it would be going too far, for the courts to declare a measure adopted by the legislature to accomplish a given purpose, a subject independent of that purpose, when we can see that it would or might facilitate its accomplishment. Within this limitation the judgment of the legislature is conclusive. . . . . . Similar decisions have been made in other states where this constitutional clause is found; and in every case the courts concur that the means of accomplishing a general purpose, and all matters fairly and reasonably connected with it, are proper to be incorporated within the bill, and are germane to the title."

In the case of *Brewster v. The City of Syracuse*, 19 N. Y., 116, the same court held that an act entitled "An act for the relief of I. L.," was valid, although it authorized the common council of the city to levy a tax and pay the claimant $600 beyond the contract price for building a sewer. In the opinion, delivered by THOMPSON, Chief Justice, he says: "The different steps by which the relief is to be brought about are not distinct subjects, but are minor parts of the same general subject. The degree of particularity with which an act is to express its subject is not defined in the constitution, and rests in the discretion of the legislature."

Under a similar provision in the constitution of Kentucky, it was held that in an act entitled "An act to amend the charter of the Cincinnati & Covington Bridge Company," a provision that the bridge company might sell, and the city of Covington might subscribe for, $100,000 of the stock, and sell the bonds of the city, and levy a tax to pay them, was valid. In the case in Kentucky the court said: "None of the provisions

of the statute should be regarded as unconstitutional, when they all relate directly or indirectly to the same subject, have a natural connection, and are not foreign to the subject expressed in the title." 2 Met. (Ky.), 219. See also *Blood et al. v. Mercelliott et al.*, 53 Pa. St., 391; *Firemen's Association v. Lounsbury*, 21 Ill., 511.

The doctrine of the cases above cited is sustained by very many other authorities, as well as by the best elementary writers on the subject, which we do not feel called upon to cite here, as this court has in the following cases affirmed the doctrine of the cases above cited. *Phillips et al. v. The Town of Albany et al.*, 28 Wis., 340. In this case it was urged that ch. 273, P. & L. Laws of 1870, entitled "An act to revise and amend the act to incorporate the Sugar River Valley R. R. Co., approved March 29, 1855, and to authorize certain towns therein named to aid in the construction of said railroad," was void because it embraced more than one subject. The late learned Chief Justice Dixon, in passing upon this objection, says: " It is further objected that the act embraces more than one subject, and also that its title is defective in not localizing the bill. Constitution, art. IV, sec. 18. The act embraces no more than one subject, and that is, building the line of the railroad named in it, or creating a corporation for that purpose, and providing how it may obtain means and facilities for accomplishing it. It is all the same general subject, which is all the constitution means. An act might be passed creating or chartering a company in full, and providing for municipal subscriptions to its stock with all their details and particulars, and yet not be obnoxious to constitutional objection on this ground. And we think there is nothing in the other part of the objection, that the bill is not properly localized in the title. The act in this respect differs altogether from that under consideration in *Durkee v. Janesville*, cited and relied upon."

In *Mills v. Charleton*, 29 Wis., 400, under an act entitled "An act to authorize the city of Madison to reassess and col-

lect certain taxes and assessments," Chief Justice DIXON says: "The objection that the act embraces more than one subject is, that after providing for the reässessment and relevy of certain taxes and assessments, . . . it proceeds also to authorize the municipal authorities to adopt and order the streets of the city, or any portion thereof, to be paved with the same or any other kind of pavement, whether patented or not, and either to purchase the patent for such city, or to let the work to the lowest bidder therefor." After discussing the question whether an act which legalizes both past and future assessments is valid, and coming to the conclusion that such an act does not violate the constitution, he then says: "If past and future assessments be not distinct subjects, so as to avoid the act, then we think it clear that the provisions for the purchase of the patent for future assessments, or so as to make them legal, cannot be regarded as a distinct subject of legislation. *Such provision is auxiliary to and promotive of the main object or subject of the act, which is the authorizing of such assessments.* It is one of the means appointed by the act for accomplishing the end in view. . . . It has, in the language of the New York authority quoted by counsel, 'a necessary or natural connection' with the subject of the act." Afterwards, in the same opinion, in discussing the question whether the subject of the act is expressed in the title, he says: "As already observed, the subjects of legislation are usually expressed with the utmost brevity and conciseness in these titles, and some consideration must be given to this circumstance in determining the question. The court is not to set aside or declare an act void because the subject was not as fully or as unequivocally expressed as it might otherwise have been. A liberal rule of interpretation must prevail in this respect, not only for the reason just stated, but because the proposition is to strike down and defeat the act of the legislature, which can never be done upon any slight or untenable grounds. It is a truth that has been often asserted and often acted upon by

courts, that, to justify the annulling of a statute by judicial sentence, the violation of the constitution must be clear and unmistakable. Considering, therefore, that the statement of the subject is always concise, and hence should be liberally construed to sustain the object of the bill, and that the departure from the constitution must be clear and unmistakable, may not the prospective as well as the retrospective operation of the bill in question be fairly and reasonably said to have ben indicated by its title? If the title had read, ' *An act to authorize the City of Madison to reassess certain taxes and assessments, and to collect certain taxes and assessments,*' there would have been, as it seems to us, little doubt that it was sufficiently comprehensive to cover the entire subject of the bill. May not the title, as it is, be reasonably understood and interpreted as meaning the same thing? It appears to us that it may, and that such construction is neither strained nor unwarranted, and is that which the court, under the circumstances, is in duty bound to adopt."

Judge Cooley, in his work on Constitutional Limitations, 145–6, after citing a large number of authorities on the subject, concludes by saying: "There has been a general disposition to construe the constitutional provision liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary for the accomplishment of the beneficial purposes for which it has been adopted."

If the title to the act in question in this case had been, "An act to incorporate the Yellow River Improvement Company, and to authorize the company to run, drive, sack and sort timber and lumber on said river," it would hardly have been insisted that the title contained two or more subjects within the liberal rule which has been applied to this subject by the courts; and the act which created the corporation, and conferred on it this power in addition to its power as a mere company to improve the river, would not be obnoxious to the same objection.

The real question of any difficulty in this case is the one discussed in the case of *Mills v. Charleton, supra;* and that is, whether the title of the act is so specific and restricted that it cannot be said to indicate any intention to confer such rights upon the corporation, and therefore the subject is not expressed therein.

We think the title is not obnoxious to this objection. It is such a title as is generally in use in acts incorporating companies; and it would be neither useful nor safe to adopt the rule that the title of every act of incorporation should go into any detailed statement of the powers which the company incorporated should exercise. All that is necessary is, that the title shall indicate in very general terms the object of the corporation; and under such title, within the rule of the cases above cited, any power may be conferred upon the corporation created, which, in the language of Chief Justice DIXON, quoted above, " has a necessary or natural connection" with the general objects of the corporation; or, in the language of some of the other cases cited, "such powers as are properly connected with, or necessary or pertinent to the general object expressed in the title, and the degree of the relationship, if it legitimately tends to the accomplishment of the general purpose, is not material."

We are very clear that the driving, running, sacking and sorting of logs on the Yellow River is legitimately connected with the improvement of such river, for the purpose of aiding and facilitating such work, and that such business has a natural and legitimate connection with the improvement of the navigability of such river. The business of improving a river for the purpose of aiding the running of logs and timber therein, is both naturally and properly connected with the business of running such timber and logs in such river when improved; and it might well be the case, that the right to run and drive logs and timber on the river, when the improvements were made, would be the main inducement to the cor-

porators to expend their money in making the necessary improvements. As there can be no doubt that, if the title of the act creating the improvement company had also stated, in express words, that the company might run and drive logs and timber on the river when improved, it would have expressed but one subject within the meaning of the constitution, we think there can be no reasonable objection to holding that the same power may be granted to the company under the general words of the title, without being obnoxious to the objection that the act contains more than one subject.

But it is insisted that the amendatory act contains more than one subject because it repeals the charter of another corporation which had been theretofore authorized to drive and run logs and timber on said river.

We think this objection is not well taken. If the legislature, under the title of the bill in question, had the power to confer the right to run logs, timber and lumber on said river, then, in conferring said power, if necessary to make it beneficial to the corporation, it might repeal any other law which interfered with the beneficial enjoyment of the right so conferred.

Judge Cooley, in his work above cited, p. 145, says: "The repeal of the statute on a given subject, it is held, is properly connected with the subject matter of a new statute on the same subject; and therefore a repealing section in the new statute is valid notwithstanding the title is silent on that subject." *Gabbert v. Railroad Co.*, 11 Ind., 365. We have no doubt of the soundness of this rule. If the practical working of the new law will be aided by the repeal of an existing law, then such repeal is not another subject, different from that expressed in the title, but is a part of the subject of such new law.

But it is probable that, if the repealing of the act of incorporation of the log-driving association was a new subject, within the meaning of the constitution, and if, in consequence thereof,

the act is broader than the title, and contains more than one subject, still so much of the act as is covered by the subject indicated by the title may be sustained. The rule upon this point is stated by Judge Cooley as follows: " If, by striking from the act all that relates to the subject not indicated by the title, that which is left is complete in itself, sensible, capable of being executed, and wholly independent of that which is rejected, it must be sustained as constitutional. The principal questions in each case will therefore be, whether the act is in truth broader than the title; and if so, then whether the other objects in the act are so intimately connected with the one indicated by the title, that the portion of the act relating to them cannot be rejected, and leave a complete and sensible enactment which is capable of being executed." Cooley on Constitutional Limitations, 148–9. In applying the above rule to the case at bar, there would seem to be no difficulty in rejecting the repealing section, and yet leaving a " complete and sensible enactment, capable of being executed." If it should be held that, by the terms of the act, the power to run logs, etc., upon said river is exclusive, then there would be no necessity for the repealing act, as the new act would in effect be a repeal of the former one by implication; and if it be held that the right conferred on the company is not exclusive, then the powers conferred upon the company could be exercised, although the former company remained in existence. And in neither case can we say, as a matter of law, that the legislature would not have passed the act had the repealing clause been omitted.

This disposes of the main question in the case. But it is insisted on the part of the counsel for the appellant, that, notwithstanding the law incorporating the company, and the acts amendatory thereof, may be constitutional, yet the respondent ought not to have judgment for a lien under such acts for the whole of his claim, and for that cause the judgment ought to be reversed.

The argument is, that a part of the claim is for tolls, and a

part for labor on the appellant's logs, not performed on the river, and that for these items the law does not give the company any lien on the logs or lumber of the appellant. It is also claimed that the greater part of the charges for driving the logs and timber of the appellant in 1876 had been paid, and that the respondent's claim consisted merely of a balance due for work done · in former years, and that, as to such balance, the respondent had · lost its lien, by not filing its claim within the time prescribed by the statute. The last objection is, we think, answered by the fact that the evidence shows that the credits given to the appellant on the respondent's account as rendered in 1876, are much larger than the balance of the account brought forward from the previous years, and the rule is, that the credits, unless there be some agreement to the contrary, must be applied to the extinguishment of the indebtedness first incurred; and under this rule the whole of the balance of the respondent's account would be for services and tolls accruing in 1876.

It is true, the appellant, in his answer, alleges that the credits mentioned in the account, given in the year 1876, were paid and applied on the work done in that year. This allegation of the appellant is denied by the respondent, and no proof is given to sustain either allegation, except perhaps the statement of the account given in evidence, and the admissions in open court of the appellant, that the amount of indebtedness claimed by the respondent was the true amount if in law the appellant was liable to the respondent for the service, tolls and labor performed. In this state of the proof, we do not think there is anything to show that the credits given in the account should not be applied to the extinguishment of the oldest items thereof.

Whether the respondent had a lien for the charge for the tolls and for the work done in getting appellant's logs into the river, depends upon the provisions of sec. 1, ch. 116, P. & L. Laws of 1871. This section, after providing that the com-

pany may charge certain sums per thousand for driving, assort-
ing and delivering logs, and a certain other sum for hauling and
sacking such logs, provides as follows: " All claims, sums and
demands for running, driving, assorting or logging in and de-
livering any logs, timber or lumber, or for any other services
to the same, which said company may have or be entitled to
receive, or that may accrue or be owing to it, under the pro-
visions of this act (or that of which this is amendatory, or any
other law), shall be a lien upon such logs, timber or lumber
and upon any and all boards, timber or other articles into
which the same shall be manufactured."

It is by virtue of the language above quoted that the re-
spondent company has a lien for any services performed by
it.   It is not denied by appellant that under this provision the
company has a lien for its services in driving, assorting or
logging in and delivering any logs, timber or lumber; but the
language is just as explicit that the company shall have a like
lien " for any other service to the same, which said company
may have or be entitled to receive, or that may accrue or be
owing to it, under the provisions of the act, or the act of which
it is amendatory, or any other law."   We think the language
is broad enough to cover the tolls which might accrue to
the company under the provisions of sec. 5 of the original
charter, and that it is quite clear it was intended to cover such
tolls.   This act was a final attempt of the legislature not only
to give the company a lien for its service and tolls, but to pro-
vide an adequate remedy for enforcing such lien.   The history
of the legislation for the company shows that up to this time
no adequate means for enforcing such lien had been provided;
and there would seem to be no reason for providing two or
more remedies, differing in their nature, for enforcing the col-
lection of the debts due to the company.

If the company, as between itself and the appellant, was
entitled to recover compensation for the services on said logs
in getting them into the river, for which the charge of $153

is made, then the language of the statute is sufficient to give the lien for such charges also.  The language is, "or for any other services to the same which said company may have or be entitled to receive."  The evidence in regard to this charge is, that the work was done at the request of the appellant or his foreman, and for the purpose of getting the appellant's logs into the general drive as the same passed down the river; and that, by the by-laws of the company, the foreman on the main drive was authorized, when he could do so without endangering the safety of the general drive, to assist with his men in bringing the logs of any member of the association from the tributaries into the main stream, and to charge such member with the value of the services so performed.  We think there can be no doubt of the right of the company to recover of the appellant, who was a member of the company, for the value of the services so performed; and, under the language above quoted, if the company has the right to recover for such services, then it has a lien for the same.

Without discussing the question whether the company could recover for labor or services performed at the request of the appellant, which was wholly outside of and disconnected with the business authorized to be performed by the company, we think there can be no doubt of the right of the company to recover the value of services performed by it at the request of the appellant, so intimately connected with the legitimate business of the company as this service is shown to have been.

*By the Court.*—The judgment of the circuit court is affirmed.