January Term,
1861.

THE TOWN OF
ROCHESTER
v.
THE ALFRED
BANK et al.

April 10.

APPEAL from the Circuit Court for *Racine* County.
No statement of the case is necessary.

*Eugene S. Turner*, for appellants.

*Strong & Fuller*, for respondents.

---

THE TOWN OF ROCHESTER vs. THE ALFRED BANK and
another
PHELPS vs. THE SAME.

An act of the legislature approved March 15th, 1856, authorized the supervisors of a town to subscribe for a certain amount of the' stock of a railroad company, and issue the bonds of the town in payment therefor, upon a majority of the legal voters of the town (voting upon the question) having voted in favor of such subscription, at an election to be called by the supervisors for that purpose. The election was held, in due form, and the subscription

made, and the bonds delivered to the railroad company, and certificates of stock therefor received by the town officers, *before* the law had been published, so as to become in force. The bonds contained a recital that they were issued in pursuance of the law referred to, "a majority of the legal voters of said town voting upon said question having voted in favor of the issuing of the bonds of the town under said act," &c. The bonds passed for value into the hands of parties who had no notice of any defect in the bonds, except such as appeared on their face; and in the years 1857 and 1858, the supervisors of the town appointed a commissioner to vote at meetings of the stockholders of the railroad company, upon the stock which had been received in payment for the bonds. *Held,* 1. That the bonds, being issued without authority of law, were void. 2. That the supervisors could not, by any subsequent act of theirs, ratify them so as to give them validity. 3. That the omission by the tax payers of the town to take any steps to restrain the issue or negotiation of the bonds, does not operate against them as an estoppel *in pais,* because the defect in the execution and issue of the bonds being a matter of law, with a knowledge of which all were chargeable, the purchasers of the bonds could not be regarded as innocent holders.

The purchasers of the bonds were bound to take notice that there was no law authorizing their issue. They must be presumed to have known the provisions of the constitution, and the time when, according to those provisions, the statute authorizing the issue of the bonds would become operative.

No element of actual fraud or bad faith being introduced, it is a case of mutual ignorance and mistake of law, against which the holders of the bonds, though otherwise innocent, cannot be relieved.

January Term, 1861.

THE TOWN OF ROCHESTER
v.
THE ALFRED BANK et al.

APPEAL from the Circuit Court for *Racine* County.

These actions were brought to restrain the collection of a tax levied to pay the interest on certain bonds which purported to have been issued by the boards of supervisors of the towns of Rochester and Burlington respectively, and to have .the bonds declared void. Both cases depended on the same state of facts. The finding of the circuit court as to the facts in the case first named, was in substance as follows: That the plaintiff, and the Fox River Valley Railroad Company, and the *Alfred Bank,* one of the defendants, were all corporations as alleged in the complaint; that the legislature of the state of Wisconsin, on the 15th of March, 1856, passed an act entitled "an act authorizing certain towns to aid in the construction of the Fox River Valley Railroad;" that the town bonds mentioned in the complaint as held by the defendants, were issued under and in pursuance of said act of the . legislature, on the first day of November, 1856; that said act of the legislature authorizing the said town of Rochter to issue said bonds, was not in fact published at the time

VOL. XIII—28

January Term,
1861.

THE TOWN OF
ROCHESTER
v.
THE ALFRED
BANK et al.

of the issuing of said bonds, and was not published until the third day of December, 1856; that the bonds mentioned in the complaint as held by the defendants, were issued and delivered to the Fox River Valley Railroad Company, in payment of capital stock in said company; that certificates of said stock were delivered to said plaintiff; that said plaintiff accepted and received and now holds the same; that all the preliminary proceedings provided by said act to be had previous to issuing said bonds, were had; that the other defendant, *Thompson*, was a contractor on said Fox River Valley Railroad, and received said bonds from said railroad company in payment of work on said road, and without actual notice of any defects in said bonds or defenses thereto, except such as appear (if any) upon the face of the bonds themselves; that said *Thompson*, in good faith, delivered said bonds to the *Alfred Bank*, as collateral security for the payment of money loaned by said bank to him; that the bank had no actual notice of any defects in said bonds or defenses thereto, except such as appear (if any) upon the face of the bonds themselves; that said bonds were issued in the form hereinafter stated, with interest coupons or warrants attached thereto; and that the supervisors of said town of Rochester, did in the years 1857 and 1858 appoint a commissioner each year to vote upon the stock received in payment for said bonds, in stockholders' meeting of said railroad company.

The bonds referred to were signed by the chairman of the board of supervisors of the town of Rochester, and countersigned by the town clerk, and were in substance as follows: "Know all men by these presents, that the town of Rochester is justly indebted and promises to pay to the order of the Fox River Valley Railroad Company the sum of, &c. This bond is issued in pursuance of an act of the legislature of the state of Wisconsin, entitled an act authorizing certain towns to aid in the construction of the Fox River Valley Railroad, approved March the 15th, 1856, a majority of the legal voters of said town of Rochester voting upon said question, having voted in favor of the issuing of the bonds of the town under said act, at an election called by the supervisors

of said town for the purpose, said election having been duly notified and conducted in all respects according to law. In witness whereof, the town of Rochester has caused these presents to be signed by the chairman of the board of supervisors, and countersigned and recorded by the town clerk thereof, at a meeting of said board duly notified for that purpose, the first day of November, A. D. 1856. Coun-tersigned and recorded in the office of the town clerk of the town of Rochester, this first day of November, A. D. 1856."

The court found as conclusions of law, that the bonds, at the time they were issued, were null and void, and were void in the hands of the defendants, and that neither the town, or its officers or inhabitants, had done any act which had made the bonds valid and binding against the town in the hands of the defendants.

*Finches, Lynde & Miller*, for appellants:

1. The respondents are estopped by the recitals in the bonds, from denying that there was a law in force authoriz-ing the issuing of the bonds at the time they were issued. They have said upon the face of the bonds, that they were issued *in pursuance* of an act of the legislature. Third parties have purchased and paid for these bonds upon the faith and credit that they were thus issued. To permit the respondents to now assert, contrary to the *express recital* of the bonds, that there was no law authorizing the issue, or that they were not "issued in pursuance of" any law, would be most unjust and inequitable. We contend that the recitals in the bond of themselves, and without anything else appearing in the case, are conclusive upon the respondents. *Trimble vs. State*, 4 Blackf., 437; *Cutler vs. Dickinson*, 8 Pick., 386; *Stow vs. Wyse*, 7 Conn., 214; *State ex rel. Smead vs. Trustees of Union Township*, 8 Ohio St., 394.

2. But if the respondents can impeach the recitals in their bonds and say that they were not true, we contend that the acts of the respondents in relation to the bonds are such that they ought not now to be permitted to deny their valid-ity. They have proceeded as though they had full authority; they have done all that the law required to be done. The citizens and tax payers of the town have voted upon the

January Term,
1861.

THE TOWN OF
ROCHESTER

v.

THE ALFRED
BANK et al.

question, and directed the proper officers to execute the bonds; the towns have received and still hold the stock of the company to whom the bonds were originally issued, have voted for two successive years upon that stock at the stockholders' meeting, and have thus availed themselves of the rights of stockholders in the railroad company; have seen their bonds pass into the hands of third parties, and not a tax payer or a legal voter has taken any step to stop the issuing or circulation of the bonds, until innocent third parties have, for a good and valuable consideration, become the holders and owners of them. The respondents have taken no step, to prevent or hinder the issuing or the circulation of the bonds; but on the contrary, have, by every act done, up to the moment when called upon to pay the bonds, held out that the bonds were legal and valid. We may well say of this attempt at repudiation, in the language of the supreme court of the state of Ohio, that the officers, in issuing those bonds, "not only acted officially, but they acted under the instructions as well as with the actual assent of the tax-payers and voters whose agents they in fact were, in making subscriptions and issuing the bonds. The township has also, as before remarked, received and still holds the price and fruit of the bonds, negotiated at their direction. The township cannot, therefore, in such case, be permitted to repudiate the acts of its agents, the trustees who negotiated the bonds." *State vs. Trustees of Union Township,* 8 Ohio State, 394; *State vs. Van Horne,* 7 Ohio St., 327; *Mills vs. Gleason,* 11 Wis., 470; *Com. of Knox County vs. Aspinwall,* 21 How. (U. S.), 539; *Commonwealth vs. The Com. of Alleghany Co.,* 32 Penn. St., 218; *Commonwealth vs. Com. Council of Pittsburg,* 34 id., 496; *Graham vs. City of Maysville,* 6 Am. L. R., 589.

*A. G. Cole, C. W. Bennett,* and *Wm. P. Lyon,* for respondent:

The direct consent of a majority of the voters of the town voting on that question, was required to authorize the issue of the bonds. Having been issued without that authority, there can be no valid ratification of them, except by the legal voters of the town. The supervisors not being empowered in the first place to do the act without the au-

thority of a vote of the people, could not do any act which <span>January Term, 1861.</span> would operate as a ratification of them, without the same authority. Their agency for the town is not general, but is <span>THE TOWN OF ROCHESTER</span> fixed by general laws, of which everybody must take notice. <span>v.</span> Angell & Ames on Corp., 248–9; *Peterson vs. The Mayor, &c.,* <span>THE ALFRED BANK et al.</span> 17 N. Y., 449; *The Proprietors of Canal Bridge vs. Gordon,* 1 Pick., 304; *Regents, &c. vs. Williams,* 9 Gill & John., 365; *Ruby vs. Abyssinian Soc.,* 15 Maine, 306; *Burdick vs. Champl. Glass Co.,* 11 Vt., 19.

*By the Court,* DIXON, C. J. These two cases depend upon   April 10. the same state of facts, and involve the same questions of law. Both are actions brought to restrain the collection of certain taxes in the towns of Burlington and Rochester, in the county of Racine, and to test the validity of certain bonds purporting to have been issued by the boards of supervisors of those towns, pursuant to chap. 138 of the Private Laws of 1856, to aid in the construction of the Fox River Valley Railroad. The taxes were levied for the purpose of paying the interest on the bonds. The validity of the bonds and the power to levy the taxes are denied upon the ground that the act in pursuance of which the bonds are said to have been issued, was not published until after they were executed and put in circulation, and this is the only question to be decided. By the 5th section, the supervisors possessed no power to issue the bonds, until a majority of the legal voters of the town, voting on the question, at an election to be called for that purpose, should vote in favor of the same. It is conceded that the act is a general law, within the decision of this court in the cases of *The State vs. Lean,* 9 Wis., 279, and *Clark vs. Janesville,* 10 Wis., 136, and that as such it could not, under the constitution, take effect until published. It is likewise conceded that it was not published until after the elections were held and the bonds issued. It appears, also, that the bonds have gone into the hands of third parties, for value, without actual notice of defects, except such as the law implies, and that in the years 1857 and 1858 the supervisors appointed commis-

January Term,
1861.

THE TOWN OF
ROCHESTER
v.
THE ALFRED
BANK et al.

sioners to vote upon the stock received in payment for the bonds.

Upon these facts it is insisted on the part of the appellants:

1.    That the respondents are estopped by the recitals in the bonds, from asserting that there was no law in force at the time they were issued, authorizing the same; and

2.    That if they can impeach the recitals, their acts in relation to the bonds are such that they ought not now to be permitted to deny their legality.

The first point is obviously bad.  The appellants do not propose to deny the recitals of the bonds, conceding the instruments to be such, but to show that they are not bonds, and therefore that there are no recitals by which an estoppel can be created.  They propose to go back of the objection taken by the respondents, and to show that the foundation upon which it must rest, does not exist.  The supervisors could not issue the bonds without previous legislative authority, and if such authority was wanting, their action was void.  To claim, therefore, that their recitals that they had such authority are conclusive as against a proposition to show that they had not, is equivalent to claiming that they could act and could bind the towns even though they possessed no such power, which is absurd.  It is to make the question of authority wholly immaterial, and to say that the unauthorized action of the board is as obligatory and effectual as that which was authorized.  The rule that a party is estopped from disputing a fact which he has solemnly admitted by deed, assumes the existence and validity of the deed, but it does not preclude him from showing that he never made it.  So here the recitals that the bonds were issued in pursuance of a law of the state of Wisconsin, do not prevent our inquiring whether there was such a law, for if there was not, then they are no bonds, and the recitals are of no effect whatever.  It being conceded that within the former decisions of this court, there was no such law, it follows that the bonds must fall for want of power to execute them, unless they have been ratified since the law took effect, or unless the subsequent conduct of the respondents has been

such as to estop them from denying their validity. And
we do not think they can be sustained on either of these
grounds.

In the first place it is to be observed that the power of the
supervisors to take any step, or to consummate anything in
the way of issuing the bonds, depended upon a previous
vote of a majority of the voters of the town, in favor there-
of. Unless authorized by the voters, they derived no author-
ity from the act to issue them. They were made the agents
of the voters, who were the real parties in interest, for the
purpose of making an agreement with the railroad company
for stock, and paying for the same in the bonds of the town;
and by the express terms of the act, they could do so on-
ly upon obtaining the assent of the voters in the manner
therein required. The voters or inhabitants of the town be-
ing the contracting party upon one side, and the railroad
company upon the other, and the supervisors, the mere
agents of the former, having no power to act without their
assent, it follows that, if they did so act, that action was
nugatory and void. But as the assent of the voters could
only be obtained upon the authority of law, if there was no
law then there was no authority, and consequently no assent;
and the supposed election was wholly futile and useless. So
that if the bonds had been issued after the law took effect,
yet as the election was had before, there would still be this
reason for holding them inoperative. Now as the voters were
the principals, and the supervisors the agents, it would seem
obvious that any ratification of the previous unauthorized
acts of the latter, after the power to do so became complete,
must come from the voters and not from the supervisors.
For it would be manifestly contrary to reason to say that the
agent himself might ratify and confirm his own unauthorized
act. This proposition is so self-evident that argument upon
it is unnecessary, if not impossible. Hence it is that the acts
are wholly inefficacious to give validity to the bonds, except
as they were directed or assented to by a majority of the
voters after they had acquired the power to do so by the due
publication of the law. The only acts, either on the part of
the supervisors or the voters, which are claimed to have any

January Term,
1861.

THE TOWN OF
ROCHESTER
v.
THE ALFRED
BANK et al.

tendency to show a ratification, are the appointments of com·missioners in the years 1857 and 1858. These appointments were made by the supervisors alone, and it is not pretended that the voters had or took any part in making them. They were matters over which the voters had no control, and to which their assent cannot be presumed. There has therefore been no ratification of the bonds, and it remains to be determined whether the voters have otherwise concluded themselves from denying their validity.

On the part of the respondents, it is strenuously insisted that they have. It is urged that, by neglecting to interfere and assert their legal rights, and restrain the issuing of the bonds, at a time when they might have done so, so as to have saved innocent third parties, they ought now to be estopped from denying their legality, or the authority of the supervisors to issue them. It is said that their failure to act and to protest, when the opportunity was afforded them, so as to protect not only themselves but the public, is a recognition of that authority, and that they should not now be permitted, as against innocent third persons, to es··cape from the fulfillment of obligations which have thus tacitly received their sanction. There can be no doubt of the general force and correctness of these principles, and that under ordinary circumstances such conduct would constitute a valid estoppel *in pais*. The authorities cited fully demonstrate that they are applicable to cases like the present, where no other principle interferes to prevent their operation. As applied to the cases cited, we yield our fullest assent to them. But they are inapplicable here, for the reason that the nature of the defect in the original execution and issue of the bonds, is such, that there can in law be no innocent holders of them. The defect was in matter of law with a knowledge of which every person is chargeable. It was in matter of law unmixed with any particular matter of fact. It was that there was no law authorizing them, and of this all parties were bound to take notice, as well the purchasers as the seller of the bonds. They were presumed to know the provisions of the constitution, as well as the time when the statute became operative under them. In this respect

January Term, 1861.

THE TOWN OF ROCHESTER

v.

THE ALFRED BANK et al.

neither party possessed advantages superior to those of the other. It was information which was alike open to all, and of which all were equally bound to avail themselves for the purpose of forming an opinion upon their legal rights. This is an old and well settled rule of the law, its maxim being that ignorance of it will not excuse; and although it may operate with some severity in the case before us, it cannot be disregarded. By taking notice of the time when the law took effect, and examining the date of their issue, it appears upon the face of every bond that they were executed without legal authority. No stronger case of the rule that ignorance of the law will not excuse or protect, could be put. So long, therefore, as the bonds were void upon their face, and within the actual or presumed knowledge of all the world, it certainly cannot be contended that the voters were guilty of any *laches* or negligence in not restraining their sale or circulation. It would be idle to say that they must commence a series of law suits for the purpose of apprising third persons of that which they already knew; and it was clearly time enough for them to resist or deny, when the validity of the bonds was seriously asserted and an effort made to collect them, which, for aught they knew or might reasonably presume, would never be done. No element of actual fraud or bad faith is introduced or relied upon. They are cases of mutual ignorance and mistake of the law, against which the holders, though otherwise innocent, cannot be relieved.

The cases of *The State ex rel. Ganett vs. Van Horne*, 7 Ohio St. R., 327, and *The State ex rel. Smead vs. The Trustees of Union Township*, 8 id., 394, are distinguishable from these in this, that there the mistake consisted in a matter of fact of a private or particular nature, of which the public or third persons were not bound to take notice, but which was known to the tax payers of the township, while here it consists in a matter of law which all are presumed to know, or if it may in any sense be considered matter of fact, that is, the *time* when a general law takes effect, then of such matter of fact as every person must know. The objections there were, that the lines of the railroads were not actually established and located through the townships before the elections were held.

The court says, admitting this to have been necessary to au thorize the elections, that it was too late for the tax payers to deny their obligations, after permitting the trustees to issue the bonds, and after paying the interest for several years without protest or interference. And so we think. The general authority of the trustees to call the elections and issue the bonds after a vote to that effect, was unquestioned. The objection was to a matter of fact, which was private in its character, and peculiarly within the knowledge of the tax-payers. It was one to which the purchasers of the bonds were in no way privy, and of which they were not bound, at their peril, to take notice. It was at most a mere irregularity in the exercise of a valid power, and not an attempt to act without any legal authority whatever. And such the court evidently regarded it; for in the last named case they say, "that the township, while retaining the price and proceeds of the bonds, proposes to set up as a defense to their payment, that the township had not in fact proceeded in all respects strictly in conformity to the statute in issuing said bonds, and that, therefore, they are void." In this respect, therefore, these cases fell fully within the doctrines of *Commissioners of Knox County vs. Aspinwall*, 21 Howard's R., 534, and the other cases cited by the appellant's counsel, but they furnish no guide for the determination of the present.

The judgment of the circuit court must be affirmed.