## MILLS VS. THE TOWN OF JEFFERSON.

*Evasive denial in answer—Finding—Publication of general laws—Interest recoverable upon coupons.*

1. Where a complaint against a corporation alleges facts necessarily within the knowledge of the officers of the corporation, or evidenced by the records and papers under their official control, a denial of any knowledge or information sufficient to form a belief is evasive, and does not raise an issue.

2. In an action upon coupons attached to bonds of a corporation issued in aid of a railroad, where the law required that the railroad company should give the corporation a certain security before the bonds should be issued, the complaint alleged that such security was duly given, which fact was not properly traversed by the answer; and the court found that the bonds were issued and delivered "in the manner set forth in the complaint," but did not otherwise find that such security was given. *Held*, that the finding was sufficient to sustain a judgment for the plaintiff.

3. Where a statute provided that it should be published in a certain newspaper, (not being that paper selected for the publication of all general laws), and also that it should be in force "from and after its passage:" *Held*, that such publication met the requirement of the Constitution (sec. 21, art. vii), and the law took effect immediately thereafter.

4. Interest coupons attached to bonds bear interest, upon default in payment when due.

APPEAL from the Circuit Court for *Jefferson* County.

Action for the amount of one hundred and fifty interest coupons for ten dollars each, attached to thirty bonds for one hundred dollars each, issued by the defendant to the Wisconsin Central Railroad Company; and also for accrued interest upon said coupons. The act authorizing the issue of said bonds was approved February 23d, 1857. Private and Local Laws of 1857, ch. 39. Section 3 of the act provides that the bonds shall not be issued unless the town supervisors shall be so instructed by a majority of the legal voters of the town, voting at their annual meeting, or at a special meeting, of which twenty-one days' notice is to be given by the clerk, &c. Section 5 provides that "before the supervisors shall issue and deliver any such bonds, the said railroad company shall give security to the satisfaction of the supervisors, that the money arising from the sale of such bonds shall be faithfully applied to the construction of its road." The 8th section provides that the act shall be published in one newspaper printed in said county of Jefferson, and shall take effect from and after its passage. It was published March 5, 1857, in the "Jeffersonian," a weekly newspaper printed in the village of Jefferson, in said county. Notice of the election was given on the 7th, and the same was held on the 28th of March. The complaint alleges that before the issuing of said bonds, "said railroad company gave security to the satisfaction of the supervisors," &c., following the language of section 5. The answer as to this and other allegations is, that "the defendant has no knowledge or information sufficient to form a belief, and therefore denies the same." The circuit court found as a fact, *inter alia*, "that the bonds and coupons described in the complaint were made, issued and delivered by the defendant at the time and in the manner set forth in said complaint," but did not otherwise find that the railroad company had given security as required by the act.

Judgment for the plaintiff for the full amount claimed in the complaint; from which the defendant appealed.

*I. W. & G. W. Bird*, for appellant, contended, 1. That there was no finding that the security required by law was given by the railroad company. *Snyder v. Wright*, 13 Wis., 689; *Sisson v. Barrett*, 2 N. Y., 406. 2. Interest cannot be recovered upon interest. The law did not authorize the town to issue bonds with coupons for the 10 per cent. interest, which should themselves bear interest, nor do the coupons in this case contain a promise for the payment of interest on their face. And if there were a separate instrument for the payment of the amount due as interest on the bond, with interest upon the amount, it must still appear that such separate instrument was made *after the simple interest had become due.* Sedgw. on Dam., 403; 2 Parsons on Con., 428; *Camp v. Bates*, 11 Conn., 487; 17 id., 243; *Connecticut v. Jackson*, 1 Johns. Ch., 13; *Van Benschooten v. Lawson*, 6 id., 313; *Tallman v. Truesdell*, 3 Wis., 443; *Doe v. Warren*, 7 Greenl., 48; *Ferry v. Ferry*, 2 Cush., 92; 1 Bouv. Law Dic., 354. 3. Sec. 21, Art. vii of the constitution, provides that no general law shall be in force until published. A provision in a general law that it shall take effect from and after its passage, is therefore mere surplusage; and such law stands as if no such provision were contained in it; and by sec. 4, chap. 5, R. S., a statute "which does not expressly prescribe the time when it shall go into operation, shall take effect on the twentieth day next after that on which it shall be approved by the governor, or otherwise become a law." This act, approved February 23d, did not take effect before March 13. The notices of election posted by the clerk on the 7th of March, and the election held on the 28th of that month, less than twenty days after the act took effect, were therefore invalid. 4. Counsel further argued that the act could not take effect even on the 13th of March, unless properly published on or before that day; that the publication directed by the act, and made in this case on the 5th of March, was not such a publication as is intended by the constitution; that this requires the legislature to provide some general method of publication, applicable to all

general laws, so that the people may always know where to look for the laws by which they are to be governed; that this general method was duly provided for in pursuance of the true intent of the constitution, in ch. 5, R. S. 1849, and ch. 6, R. S. 1858; and that no general law can be in force until published in pursuance of those statutes. 9 Wis., 289; 10 id., 136. The legislature has performed its constitutional duty by providing by law for the publication of all statutes. It can alter this law, and provide other means of publication, by a general law only, which shall apply equally to all laws thereafter passed. 13 Wis., 233. The general law, in force when the act here in question was passed, is not repealed by it, because the latter contains no provision repugnant to the former. 1 Wis., 513. It is obvious that the legislature did not intend the particular publication required by sec. 8, as that publication without which the constitution says that no general law shall be in force; for they immediately add that it shall "take effect from and after its passage." Either they considered this a private law, needing no publication, or designed the publication in Jefferson county as additional to that which the constitution and the statutory provision then existing required to be made of all general laws. 13 Wis., 370; 14 id., 151.

*Enos & Hall*, for respondent.

COLE, J. It was not seriously contended on the argument, that the denial in the answer was such as to call for proof of the fact that the supervisors, before the delivery of the bonds, received from the company the security prescribed in the 5th section of chap. 39, Private Laws of 1857, p. 64, being the act under which the bonds of the town were issued. It was distinctly alleged in the complaint that the railroad company gave security, to the satisfaction of the supervisors, that the money arising from the sale of the bonds should be faithfully applied to the construction of the road. In respect to this and many other allegations of the complaint, the town authorities

answer that they have no knowledge or information sufficient to form a belief, and therefore deny the same. It is very manifest that this is an evasive answer in respect to that allegation. The officers of the town have full control of its records, papers, &c., and they have therefore every means of knowing whether the company gave the required security or not. The answer should have been positive upon the point, if it was intended to put in issue the fact of taking the security. The means of knowledge are within the reach of the officers of the town. Hence it is mere evasion for them to say in respect to such an allegation that they have no knowlege or information sufficient to form a belief whether the security was given or not, and therefore deny the same.

But it is said that the finding of the court is insufficient to support the judgment, because the court does not expressly find as a fact that this security was given. The court found that the bonds and coupons mentioned in the complaint were made, issued and delivered by the town at the time and in the manner set forth in the complaint. Now as the complaint alleged that the security was given, and this fact is not traversed in the answer, we think no more specific finding was necessary in that particular.

Further, it is insisted that it appears from the case that at the time the bonds and coupons were issued by the town, the law authorizing the town to execute and deliver them was not in force, for the reason that no sufficient publication of the law had then been made. This act was passed and approved February 23d, 1857. Private Laws of 1857, *supra*. The 8th section provided that the act should be published in one newspaper printed in Jefferson county, and should be in force from and after its passage. The evidence shows, and the court finds, that the law was published in a newspaper called "The Jeffersonian," (published in the county of Jefferson), on the 5th day of March, 1857, which was before the town authorities attempted to act under it; and it appears that this was the only publica-

tion made until the bound volume of private laws was published on the 20th of July, 1857, which contained the law. The subscription to the stock of the railroad company was made, and the bonds executed and delivered, on the first of May, 1857. The question is, had there not been a sufficient publication of the law, so as to make it operative, when the town officers attempted to act under its provisions ? We think the question must be answered in the affirmative. Under the decisions of this court, the law was a general one, and would not take effect until published in an authorized manner. But, as already observed, the act itself prescribed the manner in which the law should be published, and as a matter of fact it was published in strict conformity to the legislative requirement. The legislature prescribed that the law should be published in one newspaper, printed in Jefferson county, and that it should take effect from and after its passage. The publication, then, which was made, was an authorized publication ; it was one made in pursuance of law. It was not only published in the precise manner the legislature prescribed, but the publication made was unquestionably the best calculated to bring an early knowledge of the law home to the locality and people most concerned in and affected by its provisions. The objection to the publication which was made is, that the law was not likewise published in the newspaper at Madison which usually prints the statutes. In the absence of other directions by the legislature, the law would doubtless have been published in that way. But to say that the legislature was not competent to provide a a different manner of publication, is to deny its power over the subject of the publication of the laws. We therefore see no sufficient ground for holding that the publication in question did not meet the requirements of the constitution.

The suit was brought to recover the amount due upon coupons annexed to certain bonds issued by the town, which bonds belong to the respondent. The coupons are in this form : "$10."

" The town of Jefferson will pay Ten Dollars on the first 'day of February, 1859, at the office of the Town Treasurer in said town, on presentation hereof, being the interest due that day on the bond of said town, No. 11, issued to the Wisconsin Central Railroad Company. By order of" &c., &c.

The circuit court gave interest on these various coupons from the time they became due and payable; and it is contended that this was erroneous. I confess I have had no little difficulty upon this point, and I am not now entirely clear as to what rule should be adopted. So far as I am aware, the question is a new one in this court, and we are not embarrassed by precedents. But the weight of authority seems to be against allowing interest upon interest, except in cases of special agreements to that effect. On the other hand, there are a number of cases which hold that where there is an express agreement in a note or bond to pay interest at a specified time, as annually, or semi-annually, interest upon the interest from the time it became due may be recovered. Most of the cases upon this question will be found in the note to *Selleck v. French*, 1 Amer. Lead. Cases (2d ed.), p. 538–9 ; see also *Stokeley v. Thompson*, 34 Penn. St., 210 ; *Leonard v. Adm'r of Villars*, 23 Ill., 377 ; *Ferry v. Ferry*, 2 Cush., 92 ; where the courts say that interest upon interest cannot be recovered : and *contra*, *Gilpcke et al. v. The City of Dubuque*, 1 Wallace, 175–206 ; *Hollingsworth v. The City of Detroit*, 3 McLean, 472 ; *Austin v. Imus*, 23 Vermont, 286 ; *O'Neall v. Sims*, 1 Strobh. Law, 115. On the whole, the cases last cited seem to me to rest upon the sounder principle, and to be sustained by the better reason. For when a person agrees to pay interest at a specified time, and fails to keep his undertaking, why should he not be compelled to pay interest on interest from the time he should have made the payment ? If he undertakes to pay in a sum of money at a given time to the owner, and makes default, the law allows interest on the sum wrongfully withheld from the time he should have made such payment. The debtor withholds from the creditor his

due as much when he fails to pay interest according to his contract as when he makes default in the payment of the principal. It is not illegal to stipulate for the payment of compound interest, or that interest as it becomes due shall be converted into principal and bear interest. *Kellogg v. Hickok*, 1 Wend., 521. Interest payable annually or semi-annually may be demanded and recovered as it becomes due, according to the authorities. A note given for it may bear interest. Why then should not the debtor, when he fails to pay interest according to his engagement, pay interest on the sum justly and equitably due? The courts which deny that interest may be recovered upon interest from the time it becomes due, generally place their decisions upon grounds of public policy, and say that to permit such a recovery would tend to usury and oppression, and encourage negligence on the part of creditors in collecting their interest, and that debt would accumulate beyond all ordinary calculation or endurance. There may be some force in these suggestions, and yet they fail to convince me that we should not adhere to an important principle in law and morals, of holding men to abide by their contracts. Besides, if a debtor fails to meet his engagement, we must assume that it is not convenient for him to pay his debt, or that it will be advantageous for him to retain the money. If the rule that interest cannot legally be recovered on interest due be adopted to render the creditor vigilant, this very vigilance will frequently embarrass a debtor who needs a little indulgence. If the debtor has the means of discharging his obligation, he can do so, and if he has not, or prefers to retain his money, let him be subject to the general rule which requires the payment of interest upon a debt equitably and justly due. The majority of the court are therefore disposed to approve of the ruling of the circuit court in allowing interest upon the coupons after they became due.

*By the Court.*—The judgment of the circuit court is affirmed.