MILWAUKEE COUNTY, Respondent, vs. ISENRING and others, Appellants.

*January 8 — February 1, 1901.*

*Constitutional law: Statutes: General and local acts: Evidence as to passage and contents of bills: Legislative journals: Uniformity in county government: Sheriffs: Salaries.*

109      9
112    ²607

109      9
114    48
114    50

109      9
116    ¹ 89
116    ³198
61 LRA  671

109      9
117    ⁴654

1. A law is "general" in the broad sense of the term if it extends to the whole state or the whole of a legislative class of localities legitimately created for the purposes of general legislation.

2. A law is "general" in the restricted sense of the term, as it is used in sec. 21, art. VII, Const., not only when it is general in the broad sense thereof, but also when it is of that character in the sense of being public. But if it applies only to a single subdivision of the state, as a county, town, city, or village, or a collection of such localities not constituting a legitimate class thereof for the purposes of legislation, it is local in character. Where a law is public and general in the sense indicated the two terms are synonymous.

3. If a law be general merely because it is public and not in the broad sense above indicated, it is local and special, and must be tested as to its validity by sec. 18, art. IV, Const., and sec. 21, art. VII, as well; and if it belong to one of the prohibited classes of special legislation, it must be further tested by the constitutional restriction on that subject.

4. The journals of the two houses of the legislature may be referred to by courts as to the steps taken by the legislature in the passage of bills, and they are generally conclusive in that regard. They are not thus effective as to the contents of a law when such contents are called in question. In such a case the presumption is that the contents of a law, as found in the official publication thereof, are the same as when it passed the legislature, and that it was constitutionally passed. If it be challenged upon either ground, the question presented is one of law to be solved by the court in the same way that other legal questions are solved. In reaching a conclusion the court may examine the journals of the legislature as to what it did in the passage of the law; and as to the contents thereof it may go further and examine the original bill, or go to any other source of information that may be judicially considered trustworthy.

5. Whether an act specially designed to make the offices of sheriff, undersheriff, and deputy sheriff in a single county salaried offices

violates sec. 23, art. IV, Const., in regard to there being but one system of county government affecting the whole state, and that such system shall be as uniform as practicable, doubted, but the point is not decided.

[Syllabus by MARSHALL, J.]

APPEAL from an order of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

The appeal is from an order overruling a demurrer to the complaint in an action against the sheriff of Milwaukee county and his bondsmen to recover the fees and charges collected by him and his deputies for official services. The allegations contained in the complaint are sufficient to constitute a cause of action if the plaintiff is entitled to the fees and emoluments of the sheriff's office which ordinarily go to the sheriff and his deputies. That turns on the validity of ch. 364, Laws of 1876, as amended by ch. 227, Laws of 1877. The first of such chapters, during its passage through the legislature, was entitled the same as it now appears in the printed laws, viz.: "An act in relation to sheriff's fees." It deals only with the manner of compensating the sheriff of Milwaukee county, providing that he shall receive a salary of $5,000 per annum, payable quarterly out of the county treasury, in lieu of the fees, costs, and charges ordinarily belonging to sheriffs by law, and that he shall charge and collect such fees, costs, and charges and pay the proceeds into the county treasury. The act of 1877 amended and revised that of 1876. It was entitled, during its passage through the legislature, the same as the published law, viz.: "An act to amend chapter 364 of the Laws of 1876, entitled 'An act in relation to sheriff's fees.'" The first section, in addition to the provisions of the original act, provides that the undersheriff and all deputy sheriffs of Milwaukee county shall collect for all official services performed by them and pay the proceeds thereof into the county treasury, requires of the sheriff quarterly reports

under oath as to all such collections, and allows him and such deputies traveling expenses when in discharge of official duties outside the corporate limits of the city of Milwaukee, the same to be paid on itemized bills audited by the board of supervisors. The second section provides for the appointment of an undersheriff at a salary of $1,400 per year, and nine deputy sheriffs, each to have a salary of $800 per year, except one to act as sheriff's clerk and have $1,200 per year, all such salaries to be paid out of the county treasury the same as the salaries of ordinary county officers. The balance of the act, in addition to the usual concluding section, relates to auditing the accounts of the sheriff and his deputies from the 1st day of January preceding the passage of the act, so as to make it relate back to that date. The validity of such laws was challenged by the demurrer.

For the appellants there was a brief by *Edgar L. Wood* and *Quarles, Spence & Quarles,* and oral argument by *Mr. Wood* and *Mr. T. W. Spence.*

*A. C. Umbreit,* counsel, for the respondent.

MARSHALL, J. Appellants' counsel insist that the act of 1876, that of 1877, and ch. 137, Laws of 1878, amending the act of 1877, are local in character, within the meaning of sec. 18, art. IV, of the constitution, which provides that, "no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title," and cite to our attention numerous decisions of this court to sustain that view. Counsel for respondent just as confidently contend that such acts are not local within the meaning of such constitutional provision, and cite to our attention numerous decisions of this court to sustain that view. Clearly, both contentions cannot be correct, though it must be admitted that each has support in our decided cases. The cause of that confusion will appear by a review of such cases, and the right of the matter will be made too plain for reasonable controversy.

The difficulty commenced in *State ex rel. Cothren v. Lean,* 9 Wis. 279, which involved the question of whether an act changing a county seat was a general law within the meaning of sec. 21, art. VII, of the constitution, which provides that, "the legislature shall provide by law for the speedy publication of all statute laws, and of such judicial decisions made within the state as may be deemed expedient. And no general law shall be in force until published." It was then contended on one side that the word "general" relates to the state at large, and on the other that it has reference to the mere public character of an act in that its effect is general as regards the people of the locality referred to therein, whether that locality include the entire state or some subdivision thereof, as a county, town, city, or village, or some collection of such subdivisions. The latter idea prevailed, Justice COLE dissenting, using language to the effect that an act cannot be public and general and at the same time local. The view thus expressed by Mr. Justice COLE has never considerately and permanently found lodgment in the jurisprudence of this state and displaced the reasoning of Mr. Justice PAINE, who delivered the opinion of the court; though it has so influenced judicial action, at times, that the court temporarily stepped aside from the position firmly taken at the start. In *Clark v. Janesville,* 10 Wis. 136, which involved the character of the law incorporating the city of Janesville, as regards sec. 21, art. VII, of the constitution, Justice PAINE, speaking for the court, rediscussed the subject of the meaning of the word "general," as used in statutes and constitutions, at great length and with much learning, demonstrating by reference to authorities, from Coke down to the time of writing the opinion, that the term "public," in its legal sense, and the term "general" in that sense, as used in statutes and constitutions, are synonymous, and that the fact that an act is local or special does not necessarily militate against its being public and general. The

court so decided, Justice COLE, however, dissenting upon the same ground as before, with increased firmness, and giving additional reasons to support his view. That case was soon followed by several others involving the same question, in which it was affirmed without dissent. *Rochester v. Alfred Bank*, 13 Wis. 432; *Berliner v. Waterloo*, 14 Wis. 378; and *Mills v. Jefferson*, 20 Wis. 54, are among such cases. In each of such cases the law involved was challenged under sec. 21, art. VII, yet the reasoning and decision in each are to the effect that an act may be local and yet be general. That naturally led to the decision in *Durkee v. Janesville*, 26 Wis. 697, opinion by Mr. Justice COLE, where an act amending the charter of the city of Janesville, a law of the same character as those held in the previous cases to be general, was decided to be local within the meaning of sec. 18, art. IV, and so clearly of that character as not to admit of a reasonable controversy about it.

In *Castello v. Landwehr*, 28 Wis. 522, in dealing with the question of whether a law authorizing a town to purchase a bridge was a general law as regards rules of pleading, the decision was in the affirmative, referring, for support, to those cases where the word "general," as used in the constitution, had been considered. The effect was in line with the reasoning of Mr. Justice PAINE in *Clark v. Janesville*, that "general" and "public," as used in statutes and constitutions, are ordinarily synonymous; that both relate to the effect of a law upon the persons who come within its scope and not to its scope as regards territory. *Mills v. Charleton*, 29 Wis. 400, followed next in order. The law there questioned related to the reassessment of taxes in the city of Madison. In harmony with *Durkee v. Janesville* and the other cases referred to, it was said to be local, and its sufficiency was tested by sec. 18, art. IV, of the constitution. In *Evans v. Sharp*, 29 Wis. 564, a law for the reassessment of certain taxes in the city of Oshkosh was held to be local.

The next case of significance is *Lawson v. M. & N. R. Co.* 30 Wis. 597. The law there called in question affected a large portion of the state. It authorized certain towns, counties, and cities to aid in the construction of a railroad. That it was a general law within the meaning of the constitutional provision requiring such laws to be published was not questioned. It was challenged under the constitutional restriction upon legislative power, as regards the title to local laws. Justice COLE wrote the opinion of the court. The title was held sufficient, but it was said, *arguendo*, that the act was not, strictly speaking, local or private within the meaning of the constitution, citing *Clark v. Janesville, supra; Rochester v. Alfred Bank, supra; Berliner v. Waterloo, supra;* and *Mills v. Jefferson, supra.* That observation was in harmony with the dissenting opinions to which we have referred, but out of harmony with the decisions of the court down to that time.

The next case of importance is *Zitske v. Goldberg,* 38 Wis. 217, 232. The opinion on rehearing was written by Mr. Justice COLE. In harmony with his previously expressed views on the subject, except in *Durkee v. Janesville,* 26 Wis. 697, to which we have adverted, he said, as regards the matter under consideration,— an act incorporating a village,— that it was not a private or local act, but a public or general law. In that, for the first time, the court adopted, seemingly, the idea that an act cannot be public and general and at the same time local. The conflict thus created was evidently not observed by the court at the time the decision was made. The indications that way are unmistakable, so we are warranted in saying that there was no intention of overruling the previous decisions on the subject. The cases cited in the opinion, except one, relate to questions under sec. 21, art. VII, of the constitution. It was overlooked that they are to the effect that the test of that provision may still require the further test as regards sec. 18, art. IV. *Durkee*

*v. Janesville* was not in mind. If those considerations leave any doubt that the decision was not intended to establish a new doctrine, it is displaced by the fact that, at the same term, in *Single v. Marathon Co.* 38 Wis. 363, opinion by Mr. Justice Lyon, who wrote the first opinion in *Zitske v. Goldberg*, where the constitutional question was not discussed, but appears to have concurred in the second opinion by Mr. Justice Cole, a law similar to the one said in that case not to be local because it was general, was said to be local in character and was tested by the constitutional provision on that subject, citing *Mills v. Charleton*, 29 Wis. 400, and *Evans v. Sharp*, 29 Wis. 564.

The subject does not appear to have received consideration in the court again until *Yellow River I. Co. v. Arnold*, 46 Wis. 214, was reached. There the opinion was written by Mr. Justice Taylor, who endeavored to bring all the cases theretofore decided by this court into harmony, and demonstrate that those holding that a law relating to a subdivision or collection of subdivisions of the state is "general" within the meaning of the constitutional provision relating to the requirement that general laws must be published before going into operation, were in harmony with those holding that such a law is local and must, in order to be valid, satisfy both sec. 18, art. IV, and sec. 21, art. VII, of the constitution. It is to be regretted that in the thorough study which the court then endeavored to give to the subject, and the collection of cases theretofore decided, which was intended to be complete so as to firmly establish the principle announced, *Zitske v. Goldberg*, 38 Wis. 217, was overlooked. The purpose indicated, however, is unmistakable, because the only other case in which the error had found a place in the opinions of the court (*Lawson v. M. & N. R. Co.* 30 Wis. 597) was cited as an instance of where a law, obviously general within the meaning of sec. 21, art. VII, of the constitution, was held to be local, and the fol-

lowing general statement was made of the law as laid down in our decided cases: " In the case of *Castello v. Landwehr*, 28 Wis. 522, it was held that a law authorizing the town of Wrightstown to purchase a bridge and issue bonds therefor and levy taxes to pay the same was a general law within the decisions first above cited; yet clearly, within the decision in *Durkee v. Janesville*, 26 Wis. 697, it was also a local law; and the same must be the case in respect to special laws authorizing a particular town or city to issue bonds to aid in the construction of railroads or other public improvements, and to levy taxes for that purpose. *Such laws are both general and local within the meaning of the constitution. The fact that a law is a general law undoubtedly negatives the idea that it is a private law*, but does not necessarily negative the idea that it is a local law within the meaning of the constitution."

The cases subsequent to the *Yellow River I. Co. Case*, so far as we can discover, down to those reported in volume 56 of the Reports, follow the doctrine there established. *Warner v. Knox*, 50 Wis. 429; *Harrison v. Milwaukee Co.* 51 Wis. 645. In neither of those cases is the *Zitske Case* referred to, but the *Yellow River I. Co. Case*, and others in harmony therewith, are cited and followed. Both opinions were written by Mr. Justice TAYLOR.

When the court reached *Cathcart v. Comstock*, 56 Wis. 590, opinion by the present chief justice, where the constitutionality of an act entitled " An act for the division of the county of Marathon and the erection of the county of Lincoln " was challenged as imperfect in its title, the idea that an act cannot at the same time be local and general again obtained a foothold. The title to the act was evidently sufficient, tested by the decisions on that subject. Such might well have been, and probably was, the view of the court, but unfortunately the reason given in the opinion for sustaining the act was that it was not a local law, citing *Zitske v. Goldberg*, 38

Wis. 217, and *Phillips v. Albany*, 28 Wis. 340. The latter case does not relate to the subject, it being merely a decision that the law under consideration was a general law under the constitutional provision on that subject. The numerous cases to which we have referred, holding that such a law as the one considered is local in character, seem to have been overlooked. This language was used: "True, the act operated in a single county, but it affected the rights of all the people therein; besides, it was of public concern, and can in no sense be deemed a private or local law, within the meaning of that section." That decision was followed by the decision in *Chicago & N. W. R. Co. v. Langlade Co.* 56 Wis. 614, filed at the same time. The only authority cited was the companion case, and *State v. Page*, 12 Neb. 386. An examination of the latter case shows that it dealt with a law which was unquestionably local in character, and the title was held sufficient. That indicates that it was in the mind of the court, in deciding the two cases, as we have heretofore suggested, that the title was sufficient to satisfy the constitutional provision with reference to local laws. The error thus committed was repeated in *Thompson v. Milwaukee*, 69 Wis. 492. An act amending the city charter of Milwaukee was there held not local, because it was general, referring to *Cathcart v. Comstock* and *Zitske v. Goldberg.*

Coming down to *Anderton v. Milwaukee*, 82 Wis. 279, opinion by the present chief justice, an act specially relating to the city of Milwaukee and amendatory of its charter,— a law of the same character as that considered in *Thompson v. Milwaukee, supra,*— was held to be local, and void for non-compliance with the constitutional requirements as to title, only cases in harmony with that view being cited,— *Durkee v. Janesville*, 26 Wis. 697, and *Yellow River I. Co. v. Arnold*, 46 Wis. 214. The three previous cases were in effect overruled and the early doctrine re-established, and so it stands to-day.

Milwaukee County vs. Isenring and others.

We have now referred to nearly all of the decisions of this court touching the subject under consideration. Those omitted, it is believed, are of little or no importance. It is believed that the *Anderton Case* contains the last expression of the court where the subject was presented for decision and decided. That is in harmony with the reasoning in *Clark v. Janesville*, 10 Wis. 136, decided in 1859, and with all the decisions that followed except the few lapses adverted to, grounded on the error that a law cannot be general and public and at the same time local. We find but one subsequent case that is liable to again revive the error. That is *Lawton v. Waite*, 103 Wis. 244, 257. The validity of an act was there challenged generally. No reason was assigned. The court did not feel bound to search for reasons for invalidating, the act. In the opinion it was said that there was no room for even a suspicion as to what was in the mind of counsel other than that; possibly, the act was deficient in its title. It was general in the broad sense of the term. Its effect extended to the entire state. This language was used as regards the general assignment of error: "No direct prohibition is pointed out, and we know of none, unless, indeed, appellants' counsel have in mind sec. 18, art. IV, of the constitution, which, however, is confined by its terms to private and local bills. The very existence of that express requirement . . . implies the absence of any similar restriction upon public and general acts." The previous decisions of the court to the contrary were clearly not in mind. They were not intended to be overruled or discredited.

It is believed that the lengthy history above given, of the holdings of this court on the question now presented anew for decision, is necessary in order to bring all the cases together and show clearly the doctrine at first established, the departure therefrom, from time to time, and the quick returns to the right line now occupied by the court, without

indications of any considerate purpose having existed to abandon it.   In that it is hoped that we have demonstrated not only what ought to be the law, but what is the law as understood here, and so intrenched it that knowledge thereof will be present in the minds of the profession and the courts whenever an occasion may arise for applying it.

What has been said, without more, might indicate that every legislative act that in any case does not extend to the whole state, must be tested by sec. 18, art. IV, of the constitution.   We do not intend to hold but that there may be a constitutional classification of localities, and legislation affecting the entire class, that will not be affected by that restriction any more than legislation for a constitutional class of cities is affected by the inhibition of special legislation.   The conclusions reached may be stated, in short, as follows: An act is "general," as contradistinguished from and inconsistent with "local," in the sense the latter term is used in sec. 18, art. IV, of the constitution, only when its operation extends to the whole state, or perhaps to the whole of some class of localities therein which the legislature may constitutionally make upon the principles recognized and approved for the classification of cities for the purpose of general legislation.   Mr. Binney, in his work on Restrictions upon Local and Special Legislation (p. 26), sums up an exhaustive and able review of the authorities that way.   An act is "general," in the restricted sense in which the term is used in sec. 21, art. VII, of the constitution, when of that character within the broad meaning of the term; also when it is "public" in that its effects extend to the people of a locality such as a county, city, town, or village, or a collection of such localities not forming a legislative class formed for some legitimate cause, the term "general" and the term "public" being considered in this respect synonymous. When an act is general merely because it is public, it is at the same time local and must be tested as to its validity by

sec. 21, art. VII, and sec. 18, art. IV, as well; and if it belong to one of the prohibited classes of special legislation, as it well may, it must also be tested by the constitutional restriction upon that subject.

The foregoing conclusions need no support outside the decisions of this court. They are the law, too firmly established to be reasonably questioned. However, a reference to authorities elsewhere, judicial and elementary, will show that all are in substantial harmony. See Endlich, Interp. Stats. § 502, and cases cited; *Gaskin v. Meek*, 42 N. Y. 186. The following are examples of laws held in other states to be local under constitutional restrictions similar to ours: An act to amend the charter of a city (*Morford v. Unger*, 8 Iowa, 82); an act to extend the corporate powers of a town (*Neifing v. Pontiac*, 56 Ill. 172); an act to change the boundaries of two counties (*Humboldt Co. v. Churchill Co. Comm'rs*, 6 Nev. 30); an act for the enlarging of a county (*Blood v. Mercelliott*, 53 Pa. St. 391); an act for the formation of a new county (*Brandon v. State*, 16 Ind. 197); an act locating a county seat (*Cutlip v. Sheriff of Calhoun Co.* 3 W. Va. 588); an act relating to the county of New York (*People ex rel. Davies v. Comm'rs of Taxes*, 47 N. Y. 501). In Sedgwick, Stat. & Const. Law, 529, note, the writer summed up a review of the authorities thus: "It is settled that if the statute be either local or private, the requirement as to title applies; that is, if the act be local as to territory, no matter how public it may be in its character, it can contain but one subject, and that must be expressed in the title." To that the following examples of local laws are given, each of which will be recognized as a general law: A statute relating to a single city or county (*People ex rel. McConvill v. Hills*, 35 N. Y. 449); an act relating to the raising of money in the county of New York, for the use of the corporation of the city of New York (*People v. O'Brien*, 38 N. Y. 193); an act to improve the public health of the city

of New York (*In re Paul*, 94 N. Y. 497); an act in relation to the fees of the sheriff of the city and county of New York (*Gaskin v. Meek*, 42 N. Y. 186). As indicated by the title, the act considered in the last case cited is of the same character as those here in question, as regards the subject under discussion. *Williams v. People*, 24 N. Y. 405, and some other cases, so far as holding that an act relating to the fees of the officers of a county is not local, were in effect overruled. Such cases were considered in *People v. O'Brien*, *supra*, where it was said, in substance, that they were not sustainable except upon the ground that the acts considered contained peculiar provisions extending their operation throughout the state. The following language was used as to the constitutional purpose in respect to titles to local acts: "The framers of the constitution must be presumed to have used the term 'local' in the sense in which it is generally understood. In this sense, any law limited to any particular locality is local, irrespective of the population of such locality, whether great or small."

It follows from what has been said that the law under consideration must be considered as local and be tested by the constitutional restriction applicable thereto. At this point we are favored with a concession by respondent's counsel, that neither the title to the act of 1876, nor that of 1877, clearly expressed the object of the law it covers. He might well have gone further and admitted that neither title indicates the primary object of the law at all. The object of the first act was to compensate the sheriff of Milwaukee county for his services by a salary paid out of the county treasury in lieu of fees. The subject of fees was matter of detail. There was nothing in the act indicating, even remotely, that its primary purpose was to deal exclusively with the subject of sheriff's fees collected by the sheriff of Milwaukee county. The title to the second act is still worse, for the body of it indicates two primary pur-

poses, one to compensate the sheriff of Milwaukee county by a salary in lieu of fees, and one to create several additional salaried county offices. Here, as before, all said about the collection and disposition of the fees is mere matter of detail. The title, at best, suggests only the details, leaving the primary object or objects entirely out of view. It is useless to endeavor to sustain such legislation by the familiar principle that the constitutional provision as to local legislation only requires that the title to a local bill, when liberally construed, shall suggest the subject thereof, and that such subject shall be single. Here the subject of the act is not suggested by the title at all. A studied attempt to evade the wise constitutional restriction is not indicated, but rather an utter failure to take any notice of it.

No doubt the constitutional provision "should be liberally construed by the courts so that its beneficial purposes will be secured without embarrassing legislation." True, any number of provisions relating to a single object, including all the necessary or reasonable details thereof, may be covered by a title in such general terms as to fairly indicate such object; but, as has been aptly said, 'the unity of the object must be sought in the end which the legislature purposes to accomplish, and not in the details provided to reach that end.' It is also true that the particularity to be observed in framing the title to a bill, within all reasonable bounds, is a matter of legislative discretion. *Evans v. Sharp*, 29 Wis. 564. But how do the laws in question stand by that test? The primary object indicated by the titles is *sheriff's fees*, generally, throughout the state of Wisconsin. The primary object covered by such titles is to take the sheriff's office of Milwaukee county out from under the general laws of the state, and make it, and all positions under and connected with it, salaried offices.

The idea, as regards this branch of the case, that it must be remembered that we are dealing with a mere technical-

ity, cannot be indorsed. We are dealing with an important constitutional restriction upon legislative power. Courts that refer to such an objection to a law as the one here presented as technical, misconceive the situation. The framers of the constitution, in adopting sec. 18, art. IV, intended to guard against the danger of legislation, affecting private or local interests, being smuggled through the legislature under misleading titles, by requiring every bill affecting such interests to be under a title likely to call attention of the lawmakers to its character, and likewise the attention of the people affected, to the end that every member of the legislature may intelligently participate in considering such bill and all objections thereto may be presented. This court very early recognized the importance of that limitation upon legislative power, and said that the evident purpose of the framers of the constitution was that it should be given full force and effect, and that there is no justification for treating it as merely directory or sanctioning evasions of it in any way. *Durkee v. Janesville*, 26 Wis. 697. Attention was there called, approvingly, to the views of the New York court expressed in *Sun Mut. Ins. Co. v. New York*, 8 N. Y. 241, 253; *New York v. Colgate*, 12 N. Y. 140, 146; and *People ex rel. McConvill v. Hills*, 35 N. Y. 449,— to the effect that the constitutional requirement was designed to do away with a notorious practice of imposing upon legislators who depend upon the titles to bills for their knowledge of the contents, and of imposing upon the public as well, and that it is mandatory.

It takes very little knowledge of the course of legislation to understand how a title to a local bill, not calculated to inform the people affected of what is impending, coupled with an assurance by the person in charge that it is of a purely local character, may cover and obscure a proposition that never ought to and never would be enacted into law if accompanied by that publicity necessary to invite legitimate

Milwaukee County vs. Isenring and others.

opposition from without the legislature, and inform legislators of its real character; and yet with the assurance that it is purely a local bill, and has the approval of the local member or members, such dangerous and mischievous proposition may reach the office of the secretary of state as a law, in form, and the persons affected only discover its character when there is no recourse left for them except that which the wisdom of the framers of the constitution has provided. No! a challenge of the sufficiency of a law, under the constitutional restruction as to its title, is not a technical objection to be treated lightly by the courts. It is an invocation of a positive limitation upon legislative power, which the court cannot treat lightly without being guilty of usurpation. True, in such a case the title to the act must be liberally construed, giving all reasonable leeway for the exercise of legislative discretion. True, it should not be held insufficient if a reasonable doubt exists as to its sufficiency. But, just as true, the letter and spirit of the constitution should be maintained in all its integrity, by holding that a title is insufficient if so defective as not to reasonably suggest the purpose of the act it covers, so that in reading the act, with the full scope of its title in mind, provisions will not be found which are clearly outside thereof. If such a discovery be made, the court cannot give an unreasonable construction to the title, to bring the body of the act within it. The title must stand or fall as it is written, and without regard to consequences. In no other way can the purpose of the constitutional limitations be effective. *In re Paul,* 94 N. Y. 497.

But it is said, conceding that the title to each of the acts considered is by itself insufficient as we find it in the published laws,— and we assume this concession to include ch. 137, Laws of 1878, amending that of 1877, not heretofore much referred to in this opinion, since if one falls all must,— that of 1876 is cured by reference to the journal of the assembly,

and the titles to the other acts are cured by reference to the first. The conclusion which counsel confidently contend for could not in any event be readily adopted. Whether it is sound or not need not be discussed or decided, since we cannot agree to the premises upon which it is based. The journal of the assembly shows that during the session of the legislature of 1876 a bill was considered and passed known as "353 A.," entitled "A bill to fix a salary for the sheriff of Milwaukee county," and that a bill bearing the same number, entitled the same as the published law, was assented to by the assembly as being correctly enrolled and ready for the necessary authentication before passing from the control of the legislature to the governor for his approval. On that showing it is said we must say the bill as passed was correctly entitled, because the court takes judicial notice of the journals of the two houses of the legislature for the purpose of determining whether bills were actually and constitutionally passed; that is, what was done in regard to the passage of bills. *McDonald v. State*, 80 Wis. 407; *State ex rel. Isenring v. Polacheck*, 101 Wis. 427. We have then this situation: The constitutional limitation upon legislative power as to the title of a bill is satisfied, if such title be perfect at the time the bill is finally acted upon. *Attorney General v. Rice*, 64 Mich. 385; *Binz v. Weber*, 81 Ill. 288. The presumption is that the title to the act in question, as found in the published laws, accords with its title when passed by the legislature, and that presumption must prevail till satisfactorily rebutted. The journal of the assembly shows that when the bill in question received final legislative assent, as the correct expression of the legislative will, it bore the title now found in the published laws. Such journal further shows that the bill, during the proceedings in the legislature leading up to its enrollment, bore a different title. On such showing it is said that the published law can be impeached by such journal, and is impeached by the references therein

to the bill we have mentioned, and that the court must so decide regardless of what the original bill itself shows, or any other evidence within reach of the court, because the court must take judicial notice of the contents of such journals and cannot properly look further.

We are unable to say that the presumption with which we must start in our investigation, viz., that the published title corresponds to the title of the bill at the time of its passage by the legislature, is overcome by the journal entries. The purport of the report of the committee on enrolled bills is that the bill in question, as approved by them, in its enrolled form, was a correct copy of the bill that passed the two houses of the legislature. That report was assented to. The result was duly authenticated and sent to the governor. Moreover, the scope of the rule that courts take judicial notice of the journals of the two houses of the legislature, and the effect of such journals as evidence, are misapprehended by respondent's counsel. While such journals are controlling as regards what the legislature does in respect to the passage of a bill (*People ex rel. Barnes v. Starne*, 35 Ill. 121), they are not necessarily so as to the contents of a statute. On the latter subject courts may look to the enrolled bill, to the engrossed bill, and to any other legitimate evidence within their reach. *Evans v. Browne*, 30 Ind. 514; *Sherman v. Story*, 30 Cal. 253; *Sup'rs Ramsey Co. v. Heenan*, 2 Minn. 330; *Foulke v. Fleming*, 13 Md. 392; *Gardner v. Collector*, 6 Wall. 499; *In re Duncan*, 139 U. S. 449, 456; *Jones v. U. S.* 137 U. S. 202, 216; *Lyons v. Woods*, 153 U. S. 649.

It must be understood that when the existence or the contents of a statute are called in question, no issue of fact is presented for a trial upon the evidence, but the court, whether one of original or appellate jurisdiction, must necessarily decide the question the same as it decides any other question of law.   In *Gardner v. Collector, supra*, it is said that 'judges, when called upon to determine the existence or the contents

of a law, may resort to any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer to the question.' The same court said, in *Jones v. U. S., supra*, speaking by Mr. Justice GRAY: "In the ascertainment of any facts of which they are bound to take judicial notice, . . . the judges may refresh their memory and inform their conscience from such sources as they deem most trustworthy;" and, "upon the question of the existence of a public statute, . . . they may consult the original roll or other official records." In *In re Duncan, supra*, the same court held that it might make such an investigation, though it was omitted by the state court which was first called upon to act. In *Sup'rs Ramsey Co. v. Heenan, supra*, it was said that the court, in solving a question regarding the constitutionality of a law, may examine the original bill as well as the journal.

What has been said clears the way for the court to examine the original bills in question in this case, and the result of such an examination is that they are found to be entitled the same as the published laws, leaving no room to say that they were not, at the time of their passage, the same in all respects as such published laws indicate.

The rule, that practical construction of a law will be regarded by the court as controlling after long acquiescence, is invoked. That rule is familiar, and that it may apply where a constitutional question is involved. *Dean v. Borchsenius,* 30 Wis. 236. But it has no application to a legislative enactment which, in neither its literal sense nor its application to the subject it affects, is ambiguous. In such a case there is no room for the operation of the rule of practical construction, or any other. The act must be taken to mean what its language obviously indicates, regardless of the length of time that a contrary view has obtained. *Travelers' Ins. Co. v. Fricke,* 94 Wis. 258, 265.

Another question is presented for decision, namely, Does

the legislation in question violate sec. 23, art. IV, of the constitution, requiring that there be but "one system of town and county government, which shall be as nearly uniform as practicable"? The suggestion is made that any system of county government must include offices and a method of filling them, and of compensating the incumbents for their services, and that every part of such system is as essential to the whole and the uniformity thereof as any other. There is reason in that, and yet we hesitate to say, at this time, that it is decisive. The question presented is so important, as regards its effect upon existing laws and the future exercise of legislative power, as to warrant the court in omitting to solve it except upon the fullest argument and a necessity therefor. That necessity does not exist here, because the conclusion which we have already reached upon the other branch of the case is conclusive of the appeal. Whether such legislation as is here questioned was contemplated by the framers of the constitution, or can be sustained, under the requirement as to uniformity of county government, admits, at least, of very serious doubt. That suggestion, probably, will be sufficient to admonish those who may be responsible for further legislation to accomplish the object of that we have condemned upon another ground, and the lawmakers generally, of the importance of so shaping their work as to make it conform to all the constitutional checks upon legislative power. The mischief that may be done by want of care in that regard, resulting in laws good in form but bad in fact,— laws that may be recognized as valid for a long term of years before coming under the scrutiny of the court,— cannot be overestimated. All must understand that we live under a constitutional government. There is no absolute freedom of action in any branch of it. The limitations upon the legislative branch are numerous and of the highest importance. The legislature may go through the form of making any kind of a law, but unless

the result stand the test of those wise limitations which wisdom dictated in our constitution, it must fail, regardless of the consequences. All the mischiefs that flow from unconstitutional enactments lie at the doors of those who are charged with the duty to make laws. The benefits of the system which leads to that — and they are supposed to be of inestimable value — will be in great part lost by any hesitation in condemning a law as void that is manifestly so, by that branch of the government which is charged with that duty.

*By the Court.*— The order appealed from is reversed, and the cause is remanded with directions to sustain the demurrer and for further proceedings according to law.